### FIRST SAVINGS & BANKING CO. v. KILMER et al.

### In re ADAMANTINE CLAY PRODUCTS CO.

(Circuit Court of Appeals, Fourth Circuit. November 13, 1919.)

### No. 1727.

BANKRUPTCY ☜267—ERROR IN CLAIMING LIEN NOT ESTOPPEL TO CLAIM PART OF PROCEEDS OF PROPERTY SOLD IN BULK.

  A creditor, claiming a lien on machinery of a bankrupt, which was accordingly offered for sale in bulk separately from the real estate, and the amount bid held subject to his claim, but whose proof showed that his lien covered only a part of the machinery, *held* not estopped to show that his original claim was made in good faith through error, and to establish his lien on the fund to the value of the property covered, if he could prove such value with reasonable certainty.

Appeal from the District Court of the United States for the Northern District of West Virginia, at Martinsburg; Alston G. Dayton, Judge.

In the matter of the Adamantine Clay Products Company, bankrupt; Wade C. Kilmer, trustee. From an order of the District Court, the First Savings & Banking Company, of Dayton, Ohio, appeals. Reversed.

Certiorari denied 251 U. S. 556, 40 Sup. Ct. 179, 64 L. Ed. ——.

Clarence E. Martin, of Martinsburg, W. Va. (Martin & Seibert, of Martinsburg, W. Va., on the brief), for appellant.

Stuart W. Walker, of Martinsburg, W. Va., for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

KNAPP, Circuit Judge. In April, 1917, the Adamantine Clay Products Company, a West Virginia corporation engaged in the business of brickmaking, was adjudicated bankrupt on its own petition. The principal assets of the company were its manufacturing plant and machinery, and the real estate on which they were located. In May following the referee in bankruptcy authorized a sale of this property by the trustee, and the latter advertised to sell the same on the 9th of June. Three days before the sale was to take place, the First Savings & Banking Company of Dayton, Ohio, appellant here, filed its petition with the referee, alleging that, as assignee of the C. W. Raymond Company, also of Dayton, it was the owner of certain machinery and equipment, included in the property to be sold, by virtue of three reservations of title, two in May, 1911, and one in January, 1912, when

---

the bankrupt procured the same from the Raymond Company. The petition recites the record of these reservations and the assignments thereof in the clerk's office of Berkeley county, W. Va., where the bankrupt had its principal place of business; states that the unpaid purchase price of the property covered by the reservations amounts to $5,487.63; avers that this amount is due the bank as assignee of the vendor; and sets out in detail the items of machinery and equipment claimed to be owned. There is no separation of these items to show which of them are included in any particular reservation, but all are grouped together as though each reservation embraced the entire list. The relief prayed for was an order—

"directing the trustee to offer for sale the property described in this petition separate and apart from the balance of the bankrupt's property; that in case the trustee has advertised the sale that the said order be revoked, and, if none has been taken, that a proper appraisement be made of each article separately; that the said property in which the title is reserved either be turned over to your petitioner, or that it be sold and the money derived therefrom be kept separate and apart and paid to your petitioner, except the surplus, which shall be paid as the law directs."

The referee declined to grant the full relief sought by the bank, but did at once make an order which, after reciting the items of property enumerated in the petition, directed the trustee—

"to offer the above property for sale separate and apart from the real estate, and the other property not heretofore specifically set out, and then as a whole, the object of this being to ascertain the amount that the aforesaid described personal property brings at public sale, so that in case it should hereafter be determined that the said the First Savings & Banking Company, a corporation, has a lien, it can be determined what value the property has upon which the lien exists, and that it will not prejudice the rights, if any, of the petitioner."

There was no appeal from this order, and accordingly the sale took place on the day named. For the "described personal property," offered in bulk, the only bid was $5,500, by one of the attorneys for the bank; for the property "as a whole" the highest bid was $10,000. On the 25th of June the sale was confirmed at these figures without objection.

The bank's proof of claim was filed April 11, 1918. It sets out an indebtedness of more than $5,600, including interest, on account of certain notes of the bankrupt, five in number, which are described by dates and amounts, and which are alleged to be renewals of the notes mentioned in three several contracts between the C. W. Raymond Company and the bankrupt for the purchase of certain machinery. These contracts, which contain reservations of title, are attached to the proof as Exhibits A, B, and C. The assignments to the bank and copies of the notes are also attached as exhibits. Objections of the trustee to this claim were filed on the 10th of June, one of which is that the proof does not show which of the five notes are renewals of the notes mentioned in Exhibit A, which of them are renewals of the notes mentioned in Exhibit B, and which of them are renewals of the notes mentioned in Exhibit C.

On the 20th of June the bank filed an amended proof of claim, which details the history of these five notes, and shows that all of them, ex-

cept one for $500, are renewals of the original notes, or the amounts unpaid thereon, which were given when the contract, Exhibit C, was executed, and that the $500 note was given for repairs to the machinery covered by that contract, and for which a lien is claimed under its provisions. It is admitted in the amended proof that all the notes given when contracts A and B were executed have been paid in full.

In brief, then, this was the situation: The bank, in its petition of June 6, 1917, had asserted ownership of all the machinery embraced in the three contracts, except a portion destroyed by fire. The remaining articles, specified in detail in the petition, had by order of the referee been sold in bulk, presumably on the supposition that all of them were alike subject to whatever lien, if any, the bank might establish; and the proceeds, $5,500, had been brought into court. It turned out a year later, when the amended proof was filed, that the full consideration of contracts A and B had been paid by the bankrupt prior to adjudication, and the bank of course had no lien on the articles purchased under those contracts. But it also appeared that the bank was the owner of renewal notes for the unpaid purchase price of the property bought under contract C, and of the security for the payment of that purchase price by reservation of title. These facts gave rise to sharp dispute as to what should be done with the $5,500. The bank laid claim to at least so much of it as represented the value of the contract C articles that had been sold in the bulk lot; the trustee contended that the bank had lost its lien on those articles as the result of a confusion of property for which the bank was responsible.

After much consideration the referee held that he could not decide, "in the absence of proof and evidence," whether or not the bank had waived its right to a lien on the fund, because in its original petition it had set up a lien which its amended proof of debt admitted it did not have; and accordingly, on February 28, 1919, he made an order that the parties within 30 days "take proof and submit evidence" in support of their contentions, "so that the referee can have all the facts before him before determining the questions involved." By petition filed next day the trustee asked the court below to review this order, and also to review the claim of the bank to a lien on the fund in court. A similar petition for review was filed by a number of creditors on the 5th of March. The certificate of the referee, dated the 3d of March, is as follows:

"Whether or not the referee has the right to require parties to offer evidence in support of certain matters not clear to him before passing upon the questions involved."

"If the District Court will not decide a proposition not first passed upon by the referee, there is nothing to certify to the court, unless it be whether or not the referee could have intelligently passed upon the questions involved without having first taken evidence."

On April 3d the learned District Judge made an order to the effect that the bank's claim be refused as a preferred or secured claim, but that it be allowed as an unsecured claim, and that the referee's order of February 28th be reformed accordingly. The bank appeals.

As the matter is here presented, it seems indisputable that when the brick company went into bankruptcy, and when the trustee advertised its property for sale, the appellant bank had a lien on so much of the property as had been purchased under contract C. Has it since done anything to lose that lien? If not, then to what portion of the fund does the lien attach, and how shall that portion be ascertained? The bank was not listed as a creditor in the bankrupt's schedules, and had no notice of the trustee's application for leave to sell. It learned in some way that the sale had been ordered, and thereupon filed a petition, in which it alleged a lien on all the property covered by the three contracts. The referee declined to revoke the order of sale, or to have an appraisement made of each article separately, as the bank had requested, but did direct a separate offer of all the articles specified in the petition, for the purpose of determining the value of the property on which a lien was claimed. It is evident that the referee intended to give the bank adequate protection, if its demand proved to be well founded, for he was careful to provide that the sale so made should "not prejudice the rights, if any, of the petitioner."

The bank must be deemed to have acquiesced in the modified order of sale, as it did not appeal; and the same may be said of the subsequent order confirming the sale. In its first proof of debt, filed nearly 10 months later, the bank again claimed a lien on the whole property separately offered as security for the notes it then held, which notes were stated to be renewals of the notes given in connection with all three of the contracts. When this claim was challenged by the objection of the trustee above noted, the bank was apparently led to examine with care and trace out the numerous transactions involved, extending over a period of years, and it was then discovered that the unpaid notes in question were not renewals of all the original notes but only of those given under contract C. The amended proof so showing was thereupon filed.

As will thus be seen, the contention that the bank has lost its entire security rests primarily on the fact that it at first claimed a lien on Exhibits A, B, and C, and afterwards admitted that the lien on A and B had been extinguished by payment. The necessary effect of this, it is alleged, was to destroy the whole lien, because all the property had been sold in bulk, at the request of the bank or with its consent, and it was then impossible to tell how much of the lump sum received therefor represented the value of Exhibit C. Indeed, it is stoutly contended, and the court below appears to have so held, that testimony is inadmissible either to explain the error of the bank at the outset in claiming too much, or for the purpose of fixing the relative value of the articles on which a lien is now claimed.

We are unable to sustain the contention. In our judgment the matter in dispute cannot be justly determined without fuller knowledge of the facts, and the referee was therefore right in requiring the parties to submit further testimony. It goes without saying that, if the bank asserted a lien on the articles embraced in A and B, when it knew that the lien on those articles had been discharged, its claim to a preference of any amount should be unhesitatingly denied. But it is not

to be presumed that the bank intended a fraud, and we think it is entitled to show, if it can, that it merely made an inadvertent mistake. The assertion in its petition and first proof of debt of a lien which it subsequently acknowledged did not exist casts upon it the burden of proving that its error was unintentional and excusable. If this condition be met, we see no reason for penalizing it with the loss of the entire security. The bank is the only creditor alleging a lien on any of the property; all the others are unsecured. So far as now appears the general creditors have not been prejudiced by the assumed mistake, and they should not be permitted to take advantage of an unintended error. If the bank gets only so much of the fund as seems equitably to belong to it, the unsecured creditors will have all that is justly their due.

Obviously the bank is not entitled to the whole fund, for part of it was derived from the sale of property on which it had no lien. Apparently it is entitled to so much of the fund as represents the relative value of the portion on which it originally had a valid lien. If that amount can be ascertained with a fair degree of accuracy, it should be awarded to the bank, in order that justice may be done to all parties. True, the proof may be so uncertain and inconclusive that no reliable finding can be made; but, on the other hand, it may be quite possible to show with sufficient approximation the proportionate value of the articles included in Exhibit C. All we are now deciding is that the bank should have the opportunity to establish by testimony, if it can, the share of the fund to which it seems fairly entitled, and that it is not to be remitted to the status of an unsecured creditor, if it can satisfy the court (a) that its original claim was the result of an inadvertent and excusable error, and (b) can prove with reasonable certainty the relative value of the property on which it appears to have a valid lien. We find no case of such similarity as to be directly in point, but the conclusion we reach is supported in principle by numerous authorities. George Carroll & Bro. Co. v. Young, 119 Fed. 576, 56 C. C. A. 380; Marine Nat. Bank v. McCreery & Co., 218 Fed. 50, 134 C. C. A. 26; In re Hull's Estate, 240 Fed. 101, 153 C. C. A. 137.

A word as to the $500 note. The amended proof of debt states that this note was—

"given for repairs to machinery set out in Exhibit C hereof, and is a lien because given for repairs or damage to the machinery while in the possession of the bankrupt under the contract set out as Exhibit C of the original petition."

We find no provision in that contract which gives such a lien, and the note should therefore be disallowed as a secured claim, unless its status as such be established by competent proof.

It follows that the decree appealed from must be reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

Reversed.