In re AMY et al.

Petition of McGUIRE.

(Circuit Court of Appeals, Second Circuit.   January 14, 1920.)

No. 96.

1. COURTS ⬯405(5)—WHERE JURISDICTION IN BANKRUPTCY IS ASSAILED, APPEAL IS TO CIRCUIT COURT OF APPEALS.

Where objection to jurisdiction of a federal court is not because it is a federal court, but to its jurisdiction in bankruptcy, its decision is not reviewable by appeal to the Supreme Court, but by the Circuit Court of Appeals.

2. BANKRUPTCY ⬯140(3), 217(½)—COURT WITHOUT JURISDICTION TO STAY ACTION NOT AFFECTING BANKRUPT ESTATE.

Where bankrupts unlawfully pledged bonds deposited with them, but in which they had no ownership, return of the bonds to the trustee vests the bankrupt estate with no interest therein, and a petition by the trustee for an order staying an action in a state court, by the owner for their recovery *held* properly denied.

Petition to Revise Order of the District Court of the United States for the Southern District of New York.

In the matter of Louis H. Amy and Ernest J. H. Amy, individually and as copartners doing business as H. Amy & Co., bankrupts.   On petition of the trustee to review and revise an order denying the petition of Edward J. McGuire, trustee in bankruptcy, for an order enjoining the further prosecution of a replevin action then pending in the Supreme Court, entitled "George Marcuard de Gonzenbach, Plaintiff, v. Edward J. McGuire, Individually and as Assignee of H. Amy & Co., Defendant."   Order affirmed.

James F. McNaboe, of New York City (John Francis Moore, of New York City, of counsel), for trustee.

Beekman, Menken & Griscom, of New York City (William C. Armstrong, of New York City, of counsel), for respondent.

Before WARD, HOUGH, and MANTON, Circuit Judges.

MANTON, Circuit Judge.   On March 5, 1919, Louis H. Amy and Ernest J. H. Amy individually and as copartners doing business under the name of H. Amy & Co. made a general assignment for the benefit of creditors to Edward J. McGuire.   On March 19, 1919, a petition in involuntary bankruptcy was filed, and an adjudication was decreed on June 9th following.   On May 28, 1919, a replevin action was commenced by George Marcuard de Gonzenbach to recover two certain

first mortgage bonds of the Chicago & St. Louis Railway Company, which were seized from the assignee by the sheriff of the county of New York by virtue of a writ of replevin issued. In return for the bonds, the sheriff left with the assignee a surety company bond in a sum equivalent to the value of the bonds. The seized property was given to the attorneys for the plaintiff in the action. Since the adjudication, the petitioner, Edward J. McGuire, has been appointed trustee of the bankrupt's estate. The bonds in question were deposited with the bankrupts in the course of business dealing between the bankrupts and the respondent as collateral for possible overdrawals, to wit, errors which might be committed in the transmission of moneys to Europe. The bankrupts had no right to use them for any other purpose. They did, however, wrongfully hypothecate them to secure a loan of $250,000 from the Chase National Bank. The Chase National Bank liquidated this loan without recourse to these two bonds and delivered the bonds to the assignee. His possession of the bonds was subject to no lien of the bank, and was held against the claim of their true owner, the respondent.

The theory upon which the petitioner attempts to support the claim of his right to the bonds appears in the answer interposed by him in the replevin suit in the state court. It is claimed that these bonds, together with other securities, were given to the Chase National Bank. These latter securities were wrongfully sold. The particular securities here involved survived the sale by the Chase National Bank to satisfy the indebtedness to it wholly by chance. The petitioner contends that the two bonds in question should be sold, and the proceeds divided pro rata among all those whose securities were wrongfully hypothecated, insisting that a lien in equity exists, in favor of the owners of the securities which were sold, in the unsold securities which were returned wholly by chance. It is claimed that the rights and interests in these bonds and the equities between the various claimants should be determined by the bankruptcy court, and should not be litigated in the state court. The present application is for an order staying the replevin action in the state court.

[1] The respondent appeared in the District Court "specially and solely for the purpose of objecting to the jurisdiction of the United States District Court for the Southern District of New York." The District Judge denied the application for a stay. He contends that this proceeding will not lie, because the court below lacked jurisdiction; that the appeal from the order below should be direct to the Supreme Court. Appeals which must go directly to the Supreme Court of the United States are those wherein the jurisdiction of the District Court as a federal court is involved. Louisville Trust Co. v. Knott, 191 U. S. 225, 24 Sup. Ct. 119, 48 L. Ed. 159. No such question is presented here. It was the duty of the trustee in bankruptcy to take into custody, for the benefit of creditors, such properties as belong to the bankrupt. Bankruptcy Act, § 70 (Comp. St. § 9654).

[2] Subdivision 7, § 2, of the Bankruptcy Act (Comp. St. § 9586) confers jurisdiction upon a court of bankruptcy to—

"cause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto, except as herein otherwise provided."

Section 23a (Comp. St. § 9607) provides:

"*Jurisdiction of the United States and State Courts.*—The United States Circuit Courts shall have jurisdiction of all controversies at law and in equity, as distinguished from proceedings in bankruptcy, between trustees as such and adverse claimants concerning the property acquired or claimed by the trustees, in the same manner and to the same extent only as though bankruptcy proceedings had not been instituted and such controversies had been between the bankrupts and such adverse claimants."

In the answer of the trustee, he distinctly disclaims ownership in the bonds, and admits that they were deposited with the bankrupts without the authority or assent of the owners for the use made of them, and admits that they were wrongfully used by the bankrupts in the hypothecation with the Chase National Bank.

The interest proclaimed by the trustee is the desire to see the proceeds of the bonds, after a sale, divided pro rata among those who are creditors and who had their bonds wrongfully converted by the bankrupt. The use made of the bonds constituted a felony under section 956 of the Penal Law (Consol. Laws, c. 40) of the state of New York. It is not incumbent upon the trustee in bankruptcy, in the faithful discharge of his duties, to try to keep, against the true owners, bonds which have been stolen, and which have been recovered and identified. Nor was it part of the duty of the trustee to take part in the equitable distribution of the stolen property or its proceeds upon its recovery. As soon as he discovered that the property which was given to his possession belonged to others, and was satisfied of that fact, he could no longer lawfully retain it, and should have delivered it to the true owner. The trustee always had at hand, when there were adverse claimants to the bonds, the right to turn them over to the registry of the District Court, or to the state court, where the replevin suit was instituted, and permit that court to determine the rights of the conflicting claimants. Section 820, Code of Civ. Proc. N. Y. This respondent has not entered the bankruptcy court, nor submitted to its jurisdiction, in an effort to determine the ownership of the bonds or the rights of the respective claimants. He has appeared specially and contested the jurisdiction of the District Court.

Since the bankrupt had no ownership interest in any of the bonds, which were hypothecated, and which were sold contrary to the rights of their true owners, no possible advantage could result to the creditors of the estate of the bankrupts, and the ratable distribution of the proceeds of the stolen property could not serve to increase the amount of the assets, or to reduce the total amount of the probable claims against the estate. The contest as to the interest in the stolen property, since it was no part of the estate of the bankrupts, is of no interest to the trustee. The Bankruptcy Act makes provision for the search or discovery of concealed assets by providing for the examination of the bankrupts and others; and, even assuming that an examination revealed this property in possession of the bankrupts at the

time the petition was filed, the trustee could not retain possession of the stolen property, and would be obliged to return it, if possession were taken, to the lawful owner. It is inconceivable to believe that any greater right exists where the property is unlawfully held after wrongful conversion by a party other than the bankrupt.

But it is contended by the trustee that demands have been made upon him for these bonds by claimants who have lost their respective securities. By depositing the bonds or proceeds with the clerk of the court, and asking for an interpleader, the trustee would protect the estate against such demands. It is quite clear that the claim involved in the present action is not a proceeding in bankruptcy, or a controversy arising in connection with bankruptcy proceedings, as, indeed, it has no relation with bankruptcy proceedings, since the bonds were never lawfully transferred to any one by the bankrupts. Assets may be released by an assignee, if he takes them in good faith and finds later that they belong to third parties. Matter of Potter v. Durfee, 44 Hun, 197. A trustee in bankruptcy may do likewise. In re McIntyre (Ex parte Pippey) 181 Fed. 955, 104 C. C. A. 419; Dunlop v. Mercer, 156 Fed. 545, 86 C. C. A. 435.

The powers and jurisdiction of the bankruptcy court are derived from the Constitution and the acts of Congress passed in pursuance thereof, and even by consent the parties cannot invest a court with jurisdiction or power not authorized by law but conferred upon it by the Constitution. In re Hollins, 229 Fed. 349, 143 C. C. A. 469. Therefore it appears that the res in question never became subject to the jurisdiction of the District Court as property of the bankrupts. It is not claimed by the trustee as the property of the bankrupts, and there is no basis for asserting the right of the court to proceed as to it, when it is not the property of the bankrupt. Murphy v. John Hofman Co., 211 U. S. 562, 29 Sup. Ct. 154, 53 L. Ed. 327; White v. Schloerb, 178 U. S. 542, 20 Sup. Ct. 1007, 44 L. Ed. 1183.

In the case relied upon by the petitioner (Well-Made Gas Mantle Co., 233 Fed. 250, 147 C. C. A. 256), the bankrupt's trustee asserted that he claimed title in good faith to the property, and there was some basis for this claim. In Michel & Lazarus v. Prentice, 234 U. S. 264, 34 Sup. Ct. 851, 5 L. Ed. 1305, the property was said to "belong to the bankrupt estate," and the order was sought to secure "the restoration of the bankrupt's estate which was in the custody of people having no right to it." In Acme Harvester Co. v. Beekman Lumber Co., 222 U. S. 300, 32 Sup. Ct. 96, 56 L. Ed. 208, there was a finding by the court that there was no dispute "upon this record that the money attached was owing to the bankrupt and unquestionably its property." It will be seen that in each of these cases there was a claim of right to the property, and they are therefore distinguishable from the facts involved in the case here considered.

We conclude that the court below properly denied the application for a stay, and the order is therefore affirmed.