## NIXON v. MICHAELS et al. *
### No. 8328.

Circuit Court of Appeals, Eighth Circuit.
Feb. 14, 1930.

Walker B. Davis, of Chicago, Ill. (Wolf, Tuthill & Lynde, Thomas J. Shaughnessy, and Moses C. Nixon, pro se, all of Chicago, Ill., on the brief), for appellant.

Denton Dunn, of Kansas City, Mo. (Meservey, Michaels, Blackmar, Newkirk & Eager and William C. Michaels, all of Kansas City, Mo., on the brief), for appellees.

*Rehearing denied May 3, 1930.

Before STONE and BOOTH, Circuit Judges, and DEWEY, District Judge.

BOOTH, Circuit Judge.

This is an appeal from an order of the United States District Court sitting in bankruptcy in proceeding No. 6029, in the matter of the Admiral Hay Press Company, directing appellant, Nixon, to turn over certain moneys to the clerk of the court in equity case No. 327 in said District Court; and further directing the clerk to distribute said moneys as specifically set out in the order.

The salient facts leading up to the order, which are agreed upon in a "statement of the case" made pursuant to equity rule 77, are briefly as follows: October 24, 1925, Nixon obtained an interlocutory decree against the Admiral Hay Press Company in equity suit No. 327 in the United States District Court for the Western Division of the Western District of Missouri. The decree ordered an accounting, and appointed appellee Michaels special master to take the same. The decree also provided that plaintiff, Nixon, should recover of the defendant company his costs and disbursements to be taxed. Plaintiff, Nixon, requested that the evidence before the master be taken in shorthand and transcribed. The master appointed appellee Spellman to do this work. The reasonable cost thereof was $153. The master in his report recommended that this item of $153 be taxed as costs; that an allowance be made to the master and taxed as costs; that plaintiff, Nixon, have judgment against defendant in the sum of $10,258.46. September 18, 1926, the court entered a final decree that plaintiff recover of defendant the amount recommended, and provided further:

"The Court allows to William C. Michaels, Esquire, for his service in acting as Special Master herein, the sum of $500.00; and to James A. Spellman, Reporter, for his services in taking and reporting the evidence before the Special Master, the sum of $153.00 and that said allowance be taxed as costs herein. And it is ordered that defendant pay all of the costs herein. Let execution be issued to enforce this decree."

Execution was taken out on said judgment, together with the costs, which included the two items above mentioned. The judgment was not satisfied either in whole or in part under said execution.

Thereafter the defendant Admiral Hay Press Company was adjudged a bankrupt under an involuntary petition filed in the same division of said District Court. Nixon filed an intervening petition in said bankruptcy proceedings, setting up his judgment and the costs incurred; alleging that no part thereof had been paid; alleging further that said decree and judgment constituted a lien upon the real estate of the bankrupt located in the county where the judgment was entered; and praying that he might have leave to foreclose the lien, or, in case the property was sold free and clear of liens, that his lien be decreed to follow the proceeds. On August 8, 1927, the trustee in bankruptcy petitioned the referee for an order authorizing the sale of the real estate free and clear of liens, including the lien of the Nixon judgment, but excepting certain specified liens. The petition stated that Nixon would compromise his claim of lien for $750, and that $850 had been offered for the real estate. The petition asked that a meeting of creditors be called to pass upon the matter.

The creditors approved the sale, and the same was confirmed. The referee entered an order that the judgment lien claim of Nixon be settled by payment of $750. September 27, 1927, the trustee drew a check, which was duly countersigned by the referee, for $750, payable to the order of Nixon, and delivered the same to the attorney for Nixon. An entry was thereupon made by said attorney on the margin of the judgment record in equity suit No. 327, releasing the lien of the judgment on the real estate of the bankrupt defendant. Thereafter the referee entered an order finding that after said payment a balance remained due Nixon and allowing the same as a general claim.

March 10, 1928, a first and final dividend was declared in the bankruptcy proceedings. The assets have been sold, and all proceeds have been used in the payment of the bankruptcy costs and allowances and in payment of said dividend. Nothing remains in the estate.

Appellees Michaels and Spellman were not listed as creditors in the bankruptcy proceeding; did not know of, or consent to, the compromise of said judgment lien by Nixon. However, on February 23, 1928, Michaels and Spellman filed in the bankruptcy proceedings a petition styled, "A Petition for An Order Impounding Funds." The petition set out the allowances made to Michaels and Spellman in the equity suit; the taxing of the same as costs; the bankruptcy proceedings; the payment of the $750 for the release of the judgment lien; that the money was still in the hands of the attorney for Nixon; that the money should have been paid to the clerk

of the court to be first applied in the payment of the costs in the equity suit. The prayer of the petition was that Nixon and his attorney be ordered to pay the money to the clerk of the court in the equity case, and that the clerk be ordered to apply the money first to the payment of costs in the equity case, including the allowances made to the petitioners.

A hearing was had, at which Nixon appeared. The result was an order by the court sitting in bankruptcy filed April 23, 1928, which directed that the check in the sum of $750, payable to the order of appellant Moses C. Nixon, then in the hands of his attorney, be indorsed by Nixon or by the attorney in Nixon's name, and be turned over to the clerk of the court in equity suit No. 327 in said District Court; the order directed further that the clerk should cash the check, and out of the proceeds pay to appellee Michaels the sum of $500, and to appellee Spellman the sum of $153, said sums being the amounts of allowances made to them in said equity suit and taxed as costs therein, and the order directed further that the clerk should apply the residue of said proceeds to the payment of other costs remaining unpaid in said equity suit; and, after the payment of such costs, if any proceeds remained, the clerk should pay the same to said appellant Nixon or to his attorney.

From this order the present appeal was taken.

The appeal was heretofore submitted, and the order appealed from was reversed. (C. C. A.) 32 F.(2d) 601. A petition for rehearing was granted, and the appeal has again been submitted on the original briefs and additional ones.

■ A motion to dismiss the appeal, heretofore made and denied, is again presented by appellees upon this rehearing. The ground of the motion is that the matter to be reviewed was a proceeding in bankruptcy, and, not being one of the matters specified in section 25 of the Bankruptcy Act (11 USCA § 48[a]), the appeal, to be effective, required an allowance by this court in accordance with the provisions of section 24(b) of the Bankruptcy Act (11 USCA § 47[b]); that no such allowance was made by this court.

We think the point is not well taken. The matter sought to be reviewed was not one of those which come up in ordinary course in bankruptcy proceedings as defined and illustrated in Taylor v. Voss, 271 U. S. 176, 46 S. Ct. 461, 70 L. Ed. 889. The matter was an unusual controversy inaugurated by strangers to the bankruptcy proceedings, seeking to appropriate certain moneys which had been paid by the trustee in bankruptcy to a third party for a release of a judgment lien held by the third party on the real estate of the bankrupt. We are clearly of the opinion that the matter was not a proceeding in bankruptcy, but a controversy arising in bankruptcy proceedings. The appeal was therefore governed by the provisions of section 24(a) of the Bankruptcy Act (11 USCA § 47[a]), and an allowance by this court was not required. The motion to dismiss the appeal is accordingly denied.

The appeal presents two main questions: First, as to the jurisdiction of the bankruptcy court to make the order in question; second, as to the right of Michaels and Spellman to the money in the hands of Nixon or his attorney.

■ The question of jurisdiction was not raised directly in the court below; nevertheless, it is the duty of this court to determine the question. M. C. & L. M. Ry. v. Swan, 111 U. S. 379, 382, 4 S. Ct. 510, 28 L. Ed. 462; C., B. & Q. Ry. Co. v. Willard, 220 U. S. 413, 419, 31 S. Ct. 460, 55 L. Ed. 521; B. &. O. R. Co. v. City of Parkersburg, 268 U. S. 35, 45 S. Ct. 382, 69 L. Ed. 834; Highway Const. Co. v. McClelland, 14 F.(2d) 406 (C. C. A. 8).

It is to be noted, first, that the status of the petitioners Michaels and Spellman is peculiar. They were not scheduled as creditors of the bankrupt, nor did they claim in their petition to be creditors of the bankrupt estate. They did not claim that they had any lien on the real estate of the bankrupt or on any other of its property. They did not claim that there was any fraud or mistake in the bankruptcy court by reason of which the money was paid to Nixon. The order of the court (acting through the referee) had been that the money be paid to Nixon, and it was so paid. The petitioners did not claim in their petition that the trustee should have paid the money to them. They did not claim that the money paid to Nixon became in his hands a trust fund in which they were interested; they did claim that the money should have been paid to the clerk of the court to be first applied to discharge the costs in the equity suit; but, so far as appears, they had not asked the bankruptcy court to rescind the order of the referee and in place of that order to direct the trustee in bankruptcy to pay the money to the clerk of court in the equity suit.

It is to be further noted that neither the trustee in bankruptcy nor any creditors of the estate are shown to be in any way interested in the controversy raised by Michaels and Spellman.

It is still further to be noted that, at the time when Michaels and Spellman filed their petition in the bankruptcy court, the fund, the res, which was the basis of the controversy, was not in the possession of the bankruptcy court. The lien of the judgment had been compromised; the lien had been released of record; the land had been sold free of the lien; the money had been paid to the agent of Nixon, and had been in his possession about five months. The transaction was closed so far as the bankruptcy court was concerned.

Notwithstanding this situation, the bankruptcy court undertook to adjudicate that the money so paid to Nixon or his attorney should have been paid to the clerk of the court in the equity suit; that the right of Michaels and Spellman in and to said money was, to the extent of the allowance made to them in the equity suit, superior to the right of Nixon; that the money should be paid over by Nixon and distributed in the equity suit.

■ A District Court of the United States sitting as a court of bankruptcy is a court of limited jurisdiction. Limitations exist as to subject-matter; as to territory; as to the residence and occupation of the debtor to be adjudicated; as to the status of the corporation or person to be adjudicated; and as to other matters. Remington on Bankruptcy (3d Ed.) c. III. And consent cannot confer jurisdiction over subject-matter. The express provisions of the statute and the necessary implications are controlling. Id. p. 66; Bardes v. Hawarden Bank, 178 U. S. 524, 535, 20 S. Ct. 1000, 44 L. Ed. 1175; Henrie v. Henderson (C. C. A.) 145 F. 316, 320; Nelson v. Svea, etc., Co. (D. C.) 178 F. 136, 140; In re Hollins (C. C. A.) 229 F. 349, Id. (C. C. A.) 238 F. 787; Jones v. Kansas City, etc., Co., 1 F.(2d) 649 (C. C. A. 8); In re Judith, etc., Co. (C. C. A.) 5 F. (2d) 307.

■ It is true that persons not parties to the bankruptcy proceedings may usually intervene or be brought in, when necessary to protect their rights in or to a res in the bankruptcy court. Remington on Bankruptcy (3d Ed.) § 2484; In re Goldsmith (D. C.) 118 F. 763; Fisher v. Cushman (C. C. A.) 103 F. 860, 51 L. R. A. 292; In re Rochford, 124 F. 182 (C. C. A. 8); Knauth, Nachod & Kuhne v. Lovell (C. C. A.) 200 F. 403; First

Sav. & Bk. Co. v. Kilmer (C. C. A.) 263 F. 497.

But, leaving out of consideration preferential and fraudulent transfers, unless there is involved a res in the possession of the bankruptcy court, and in which res as a part of the bankrupt estate third parties claim rights, the bankruptcy court has no jurisdiction to allow such third parties to come into the bankruptcy court merely to litigate therein rights even against parties to the bankruptcy proceeding, and even though the property involved may once have been part of the bankrupt estate. Remington on Bankruptcy (3d Ed.) §§ 2191, 2199; Henrie v. Henderson, supra; In re Hollins, supra; In re Girard Glazed Kid Co. (D. C.) 136 F. 511; In re Swofford Bros. Dry Goods Co. (D. C.) 180 F. 549, 557; In re Siegel (C. C. A.) 256 F. 226.

In the Henrie Case a sale had been made of the bankrupt's land and the purchase price had been paid. A third party instituted proceedings in the bankruptcy court seeking to restrain the trustee from making a deed to the purchaser, claiming that a deed of part of the land should be made to him. The court said:

"It is a controversy which does not in the slightest degree affect the creditors of J. B. Henderson, the bankrupt, nor is the trustee in any wise affected. Stripped of all extraneous matters, it appears to be an effort on the part of Henderson to compel specific performance of a contract relating to the sale of land. There is no provision which gives the bankruptcy court jurisdiction to hear and determine controversies of this kind. The object of the bankruptcy law is to afford the means by which the creditors of the bankrupt may secure an equitable and fair distribution of the bankrupt's property, etc., and the act contemplates that any collateral questions growing out of the settlement of the bankrupt's estate may be heard and determined in that court.' But here we have parties who are contending about a matter which is in no way related to or connected with the affairs of the bankrupt. Under these circumstances, we fail to understand the theory on which this proceeding was instituted."

See, also, First Nat. Bank v. Chicago Tit. & Tr. Co., 198 U. S. 280, 25 S. Ct. 693, 49 L. Ed. 1051; In re Frischknecht (C. C. A.) 223 F. 417; In re Amy (C. C. A.) 263 F. 8.

■ And, even if there be a res in the bankruptcy court, it does not follow that it may be reached by a third party—a stranger to the bankruptcy proceedings. Thus it is held

that the bankruptcy court has no jurisdiction to entertain a garnishment proceeding where a third party seeks to attach a dividend which has been declared by the trustee in bankruptcy, but not yet paid to the creditor of the bankrupt. In re American Elec. Tel. Co. (C. C. A.) 211 F. 88. See also In re Hollander (D. C.) 181 F. 1019; In re Argonaut Shoe Co. (C. C. A.) 187 F. 784.

The case of Brumby v. Jones (C. C. A.) 141 F. 318, 320, is instructive. T. R. Jones (respondent) and another were adjudicated bankrupts. Wykle was appointed trustee. M. C. Jones and others filed in the bankruptcy proceedings a petition in intervention, alleging that they were sole beneficiaries under the will of J. P. Jones, deceased; that T. R. Jones was executor of the will; that he became indebted to the estate of J. P. Jones, and to secure the same made a mortgage on real estate running to himself as executor; that later he canceled of record the mortgage, though the debt was not paid; that later he made a mortgage on the same land to one Lowry, which mortgage had been transferred to one Mumford. The prayer was that the cancellation of the mortgage to Jones as executor be annulled; that the mortgage be declared a first and superior lien on the real estate; that the land be sold by the trustee and the proceeds be paid to the petitioners. The trustee answered, denying knowledge and disclaiming interest. Brumby was made a defendant, and set up in her answer ownership of the later mortgage. The District Court sitting in bankruptcy heard the matter, and held that the cancellation of the mortgage to Jones as executor be annulled; that the mortgage be declared a first and superior lien on the land; that the mortgage debt amounted to $5,794 and interest; that the property be sold free of incumbrance; and that the proceeds, after payment of taxes, etc., be applied to the payment of the mortgage debt. The appellate court reversed the decree, on the ground that the bankruptcy court had no jurisdiction. It said:

"The first question presented for our consideration is as to the jurisdiction of the bankrupt court to hear and determine the controversy between the real parties to this cause. The subject-matter of the suit is one of equitable cognizance purely. The District Court does not possess the general power to entertain a suit in equity, and, unless the bankrupt act has conferred upon it jurisdiction to entertain a plenary suit in equity, such a suit cannot be maintained. * * * The jurisdiction of the district court, as granted by the bankruptcy act, is unquestion-able bankrupt jurisdiction, and not general jurisdiction to hear and determine controversies between adverse third parties, which are not strictly and properly a part of the bankruptcy proceedings. * * *

"The controversy involved in this suit is not one relating to the collection and distribution of the bankrupt's estate. It is not a controversy with reference to property in the actual possession of the bankruptcy court, or where it has been taken from the possession of its trustee or receiver without its authority. It is not one arising in the bankruptcy proceedings in reference to property subject to distribution to the general creditors of the bankrupt, or one where, by the nature of the controversy, power is conferred on the court to determine conflicting liens, or the validity and priority of liens between secured creditors. This is an independent controversy between third parties who claim equities, as between themselves, in certain property of the bankrupt, which is not in the possession of the trustee, or a part of a fund for distribution among the general creditors of the bankrupt.

"The complainants, M. C. Jones, Annie L. Jones and J. P. Jones, are not creditors of T. R. Jones, the bankrupt, and they do not claim to be such. Their claim is not a provable debt against the bankrupt's estate. * * * Moreover, this controversy is one in which the trustee in bankruptcy and the unsecured creditors have no interest. * * *

"In the case at bar the court did not have possession of the property, and the complainants in their bill do not claim ownership thereof or a lien thereon; but, as we have said, they seek to have a trust declared in the property, and a superior lien thereon decreed in their favor. * * *

"We are of opinion that this proceeding cannot be considered one for the administration and distribution of the property of the bankrupt, and is in no proper sense a bankruptcy proceeding, and that the district court was without jurisdiction in the cause."

Applying the principles announced in the foregoing cases to the facts in the case at bar, and bearing in mind that the interveners were not creditors of the bankrupt, that they claimed no lien upon or interest in any of the assets of the bankrupt estate, that neither the trustee nor the creditors of the bankrupt were interested in the controversy of the interveners, that the res sought to be reached by the interveners was not in the possession of the bankruptcy court, we are led to the

conclusion that the bankruptcy court had no jurisdiction to determine the controversy.

In view of this conclusion, we are precluded from considering the other several interesting questions raised by the parties to this appeal.

The former opinion of this court is withdrawn.

The order of the trial court is reversed, with instructions to dismiss the petition in intervention for lack of jurisdiction.