## CITY OF ORANGEBURG v. SOUTHERN RY. CO.

## SOUTHERN RY. CO. v. CITY OF ORANGEBURG et al.

### No. 5017.

Circuit Court of Appeals, Fourth Circuit.

April 12, 1943.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

The City of Orangeburg instituted a suit in the Court of Common Pleas for Orangeburg County, South Carolina, against the Southern Railway Company, a Virginia corporation, to foreclose the lien of a paving assessment levied by the city in the sum of $6,937.01 on land of which the Railroad Company was alleged to be the owner. By appropriate proceedings the case was removed to the United States District Court below. Shortly thereafter the city instituted a second action in the state court to enforce the same assessment against the same land and, omitting the Southern Railway Company, joined as defendants the Southern Railway-Carolina Division, the South Carolina and Georgia Railroad Company, the South Carolina Railroad Company and the South Carolina Railway Company. The four last-named organizations are or were South Carolina corporations; and it is sufficient for the purposes of this discussion to mention hereafter only the Southern Railway-Carolina Division into which it is said the other South Carolina corporations were merged, and thereupon ceased to exist. In addition, the City of Orangeburg, acting through one of its officers, contemporaneously attempted to take possession of the land and to foreclose the lien of the assessment thereon by a proceeding in the nature of a summary process.

After the second suit was brought in the state court, the Southern Railway Company, the sole defendant in the removed case, filed a petition therein praying that the city and its officer show cause why they should not be adjudged in contempt of the federal court and also that they be restrained from interfering with the jurisdiction of that court by further proceedings to enforce the lien in the state court. In answer to this petition the city and its officer disaffirmed any intention to disregard the authority or act in contempt of the federal court and explained the bringing of the second suit on the ground that after the first action was brought, the city discovered that the Southern Railway Company was merely the lessee of the land and believed that in order to enforce the lien of the assessment it was necessary to bring into court the Southern Railway-Carolina Division, the real owner of the land. This answer took the further posi-

Hugo S. Sims, of Orangeburg, S. C., for appellant.

Adam H. Moss, of Orangeburg, S. C., and Frank G. Tompkins, of Columbia, S. C., for appellee.

tion that the federal District Court had acquired no jurisdiction over the land in the removed case because the Southern Railway Company was not the owner and therefore the second suit had conferred exclusive jurisdiction upon the state court since the action was in rem and service of process had been made therein upon the owner of the property. The federal court dismissed the charges · of contempt of court on the ground that the contemnors had satisfactorily purged themselves of the contempt, but decreed that it had first secured jurisdiction over the property and enjoined the city and its officer from enforcing the lien ·of the assessment in any other manner or proceeding than in the case in the federal court. From this decree the pending appeal was taken.

■ The authority of an incorporated city in South Carolina to provide for the payment of one-half of the cost of street improvements by levying an assessment upon abutting property owners is derived from Article 10, § 17 of the State Constitution, and §§ 7374 and 7376 of the State Code. It is provided that the power may not be exercised except upon the written consent of two-thirds in number of the owners of the property and that the assessment must be entered in an assessment book stating the names of the owners, the location of the property, etc. The proper procedure for enforcing the lien of such an assessment was discussed at length in Town of Cheraw v. Turnage, 184 S.C. 76, 191 S.E. 831, where it was pointed out that under § 7376 payment may be compelled by summary proceeding by levy of an execution and sale of the property in accordance with the procedure relating to taxes; but that this method is cumulative and alternative and the better method is by suit in equity to foreclose the lien because in such suit every person who has any interest in the property can present his defense and the purchaser's title is better ·assured. It was further held that such a suit is a suit in rem; and that the equitable jurisdiction is not defective simply because all the persons interested in the property are not parties to the cause since the court has power to decree a sale of the interests of the defendants before it whereby their title will be transferred to the purchaser.

■ It is conceded that assessments for street improvements do not give rise to a personal liability under the South Carolina law and that the suits under discussion in the instant case are actions in rem. Town of Cheraw v. Turnage, supra, Beatty v. Wittekamp, 171 S.C. 326, 172 S.E. 122. Under the established rule set out in Kline v. Burke Const. Co., 260 U.S. 226, 43 S.Ct. 79, 67 L.Ed. 226, 24 A.L.R. 1077, and in many other decisions, the court, state or federal, which first acquires jurisdiction of the subject matter of a suit in rem holds it to the exclusion of any other court until its duty is fully performed, and to that end may enjoin the parties· from proceeding in any other court when the effect of action therein would be to defeat or to impair its own jurisdiction. Our function is to determine whether the Southern Railway Company, the Virginia corporation, had such an interest in the property upon which the assessment was laid that the federal court obtained jurisdiction of it upon the removal of the first suit.

The precise interest of the Southern Railway Company in the land is not open to doubt. It holds the land under a lease of June 30, 1902 from the Southern Railway-Carolina Division. By that demise certain lines of railroad, together with all the lands of which the Carolina Division was seized and all rolling stock which it owned, were granted and conveyed to the Southern Railway Company for the full term of nine hundred and ninety-nine years, upon condition that the lessee should operate the railroad and use the revenues to pay the operating expenses, the cost of necessary new equipment, all taxes and assessments, federal, state or municipal levied on the property, and interest on the funded debt aggregating $11,259,500, and pay one-half of the residue to the Carolina Division. The lessee specifically agreed that it would discharge all of the duties and obligations imposed by the States of South Carolina, North Carolina and Georgia or other authorities upon the lessor as a common carrier or as the owner and lessor of the demised lines of railroad, and that it would not permit any claim to be created by its act or neglect against the lessor which might be adjudged to be a lien upon the property of the latter.

■ It is obvious that by this transfer the Southern Railway Company became the virtual owner of the property even though it be considered that under the South Carolina decisions the technical relationship between the parties to the lease is

that of lessor and lessee. Columbia Ry. Gas & Elec. Co. v. Jones, 119 S.C. 480, 112 S.E. 267. The taxing statutes of the State treat the relationship of the lessee to the land in such a conveyance realistically, for § 2697 of the South Carolina Code provides that all leasehold estates held on perpetual lease or for a term renewable forever at the option of the lessee shall be valued for taxation at the full price of the land and continue to be taxed at such value to the end of the term. In the light of the rights and duties of the Southern Railway Company under the lease and under the taxing statutes of South Carolina, and in view of the nature of a suit to enforce the lien of an assessment disclosed in Town of Cheraw v. Turnage, supra, there can be no doubt that the Southern Railway Company had such an interest in the property as to justify the institution and maintenance of the suit against it without the joining of the Southern Railway-Carolina Division as joint defendant. In that suit the validity of the assessment can be determined, the extent of the obligation resting upon the party duty bound to pay all taxes and assessments can be ascertained, and, if necessary, the lien of the assessment can be enforced by the sale of an interest in the land which for all practical purposes amounts to complete ownership.

The same considerations furnish a complete answer to the additional contention of the city that the lessor is an indispensable party to the suit in the federal court, because it has an interest in the property of which it cannot be deprived unless by due process it is summoned and given an opportunity to be heard. For these reasons it is said the federal court should take notice that the Carolina Division, a South Carolina corporation, is an indispensable party whose joinder would destroy the diverse citizenship on which the jurisdiction is based and require the dismissal of the suit. Not only the holding in Town of Cheraw v. Turnage, supra, but the decisions of this and other federal courts are contrary to this view. An indispensable party has been defined as one who has an interest in the controversy of such a nature that a final decree cannot be made without either affecting that interest or leaving the controversy in such a condition that its final determination may be wholly inconsistent with equity and good conscience.

We have considered this question in a number of cases, including Cobb v. Inter-state Mortgage Corp., 4 Cir., 20 F.2d 786, Halpin v. Savannah River Elec. Co., 4 Cir., 41 F.2d 329, Commercial Casualty Ins. Co. v. Lawhead, 4 Cir., 62 F.2d 928. In the first of these cases suit was instituted against the transferee of an insolvent corporation, which was of the same citizenship as the plaintiff and was not joined as a party to the suit. It was held that jurisdiction was not defeated by the absence of the insolvent because it appeared that as the result of the transfer and its insolvency it could not be injuriously affected by any decree that might be entered. In the third case suit was brought by a depositor in a bank in the hands of receivers against an insurance company which had insured the deposit, but the bank was not joined as party defendant because service could not be obtained upon it. It was held not to be an indispensable party since its liabilities as a debtor would not be affected and the insurance company would be subrogated to the rights of the depositor. In the second case a contrary ruling was had. Suit was brought by the trustee under a bond mortgage of a corporation to prevent a condemnation of the corporation's land without joining the corporation as a party, and it was held that the suit must be dismissed because the corporation mortgagor, the owner of the land, was an indispensable party. See also Baltimore & O. R. Co. v. City of Parkersburg, 268 U.S. 35, 45 S.Ct. 382, 69 L.Ed. 834; United States v. Bank of New York & Trust Co., 296 U.S. 463, 56 S.Ct. 343, 80 L.Ed. 331; Niles-Bement-Pond Co. v. Iron Moulders' Union, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145.

The above-mentioned decision of this court referred to former Equity Rule No. 39, 28 U.S.C.A. § 723 Appendix, which is now superseded by Rule 19(b) of the Rules of Civil Procedure, 28 U.S.C.A. following section 723c. This provides that when persons are not indispensable, but ought to be parties if complete relief is to be accorded, the court shall order them summoned to appear if they can be made parties without depriving the court of jurisdiction; and also that the court in its discretion may proceed without making such persons parties if their joinder would deprive the court of jurisdiction of the parties before it, but in such case the judgment rendered does not affect the rights or liabilities of absent persons.

Similar questions arise when the jurisdiction of a federal court is assailed upon

the intervention or subsequent joinder of parties whose addition puts parties of the same citizenship on opposite sides of the case. It has been held that jurisdiction is not lost by such intervention or joinder, if the new parties are not indispensable but merely conditionally necessary parties to the suit, that is, those who have an interest in the controversy separable from that of the parties before the court which will not be affected by a decree made in their absence. Thus, it has been held that the intervention or subsequent joinder of a landlord in a suit to recover real estate in the possession of the tenant does not defeat the jurisdiction whatever the landlord's citizenship. Phelps v. Oaks, 117 U.S. 236, 239, 6 S.Ct. 714, 29 L.Ed. 888; Hardenbergh v. Ray, 151 U.S. 112, 14 S. Ct. 305, 38 L.Ed. 93; People of Porto Rico v. Ramos, 232 U.S. 627, 34 S.Ct. 461, 58 L. Ed. 763; King v. Davis, C.C., 137 F. 198, 222, affirmed in Blankenship v. King, 4 Cir., 157 F. 676.

In Phelps v. Oaks, supra, it was held that the plaintiffs, who sought to recover possession of lands occupied by a tenant under a lease, had a substantial and real controversy with the tenant which gave the federal court jurisdiction by diverse citizenship when the case was removed from the state court upon the petition of the tenant; and that the landlord was not an indispensable party to the suit and when, upon his petition and that of the tenant, he was brought in as codefendant, the jurisdiction of the federal court was not lost although he and the plaintiffs were citizens of the same state. The court said (117 U.S. 240, 6 S.Ct. 716, 29 L.Ed. 888): "It was quite proper, therefore, for the circuit court to admit the landlord as a party, for the purpose of defending his tenant's possession, and through that, his own title; and to this end he might not only be permitted to appear as a party to the record and codefendant, but to control the defense as dominus litis, raising and conducting such issues as his own rights and interests might dictate. And this need not arrest or interfere with the jurisdiction of the court, already established by the plaintiffs against the tenant in possession; for such proceedings should be treated as incidental to the jurisdiction thus acquired, and auxiliary to it, as in like cases, in equity, one interested in the subject-matter, though a stranger to the litigation, may be allowed to intervene pro interesse suo. Krippendorf v. Hyde, 110 U.S. 276, 4 S.Ct. 27 [28 L.Ed. 145]."

Again, the bringing in of additional parties in suits to foreclose liens on real estate in the possession of a federal court will not destroy the jurisdiction, irrespective of the citizenship of the intervenors, when the determination of their rights is deemed to be ancillary to the main purpose of the suit. This ruling was made in a suit to foreclose a crop lien for monies advanced when a new defendant was brought in by cross-bill, Lilienthal v. McCormick, 9 Cir., 117 F. 89; and in a suit to enjoin a public utility commission from enforcing new rates upon the plaintiff so as to impair a contract between the plaintiff and another corporation of the same citizenship which intervened as a party defendant. Wichita R. & Light Co. v. Public Util. Comm., 260 U.S. 48, 43 S. Ct. 51, 67 L.Ed. 124. See the annotation in 134 A.L.R. 335 et seq.

 Our conclusion is that the questions at issue in the pending case may be decided in the absence of the Southern Railway-Carolina Division without in any way jeopardizing its interests, and also that if this corporation should be joined as a party at the present stage of the controversy, the District Court would not lose jurisdiction.

The decree of the District Court is affirmed.