Frank G. Tompkins, of Columbia, S. C., and Adam H. Moss, of Orangeburg, S. C., for defendant.

### CITY OF ORANGEBURG v. SOUTHERN RY. CO.

### No. 454.

District Court, E. D. South Carolina, Orangeburg Division.

Feb. 7, 1944.

WARING, District Judge.

This is an action brought by The City of Orangeburg against the Southern Railway Company to foreclose an assessment lien for street improvements. The case was originally instituted in the Court of Common Pleas for Orangeburg County, South Carolina, and was removed to the federal court. A jurisdictional question arose and this court, by an opinion and decree dated June 25, 1942, retained jurisdiction of the cause, 45 F.Supp. 734. An appeal from this decision was affirmed by the Circuit Court of Appeals for the Fourth Circuit, 134 F.2d 890.

The cause having been remanded to this court was set for trial.

The complaint alleges street improvement liens against certain property held by the Southern Railway Company assessed by The City of Orangeburg, under authority of the Constitution and Statutes of the State of South Carolina. The defendant by its answer set up various defenses. The second defense is as follows:

"For a Second Defense

"That if any valid assessments were ever levied against the property mentioned and described in the complaint, the said assessments became due and payable on the 15th day of January, 1927, and constituted a lien on the said property for a period of five years, at the expiration of which time, to-wit, January 15, 1932, or thereafter and prior to the institution of this action, the said lien expired, and plaintiff now has no interest in or claim upon the real estate mentioned and described in its complaint for any street improvement assessments."

The Constitution of South Carolina, Article X, Section 16, authorizes the City of Orangeburg, South Carolina, to levy an assessment upon abutting property for the purpose of paying for permanent improvements; and an Enabling Act (March 11, 1915, 29 St. at Large, page 586), in substantially the same language was adopted by the General Assembly and under the authority of these the City of Orangeburg adopted an ordinance providing the method of levying assessments for improving streets and sidewalks. Under this ordinance abutting property was to be assessed for permanent street improvements upon certain action being taken by a majority of the abutting owners and the corporate authorities. Whether all of these requirements were properly complied with are matters not now under consideration.

The parties to this cause, after due notice, appeared before me for the purpose of presenting the sole issue raised by the above-quoted portion of the answer. They agreed that if the City of Orangeburg had lost its lien and the court should so find, that it would be useless labor and expense to go into the other allegations and defenses, as the trial of these issues would probably require the attendance of a number of witnesses and the presentation of considerable data as to the location and value of the lands and various other matters in connection therewith. In my opinion this request was reasonable and I, therefore, had a special hearing upon the sole issue of the defense set up in the above-quoted Second Defense. If the defense be good the complaint should be dismissed. If it be not good it should be stricken from the answer.

The facts on which this defense is based are not in dispute and the question is the construction of the laws and ordinances governing these assessments so as to determine whether the assessments are barred by lapse of time. I quote the pertinent parts of the ordinance from Section 1:

"Each owner of the property so assessed may within thirty days after the completion and acceptance by City Council of such improvement immediately abutting the property of such owner, pay into the City Treasury the full amount of said assessment, or shall have the right in case of the improvement of sidewalks to have such assessments divided into five equal payments; the first installment thereof shall be due thirty days after the date of completion and acceptance by City Council of such improvement immediately abutting his property, and the remaining installments shall be due in equal amounts, due respectively in one, two, three and four years from the date of the first installment, with interest on all of such installments from the date of the first installment at the rate of six per cent per annum, payable annually until paid in full, and in case of the improvement of streets to have such assessment divided into ten equal payments: the first installment thereof shall be due thirty days after the date of the completion and acceptance by City Council of such improvement immediately abutting his property, and the remaining installments shall be due in equal amounts, due respectively in one, two, three, four, five, six, seven, eight and nine years from the date of the first installment, with interest on such installments from the date of the first installment, at the rate of six per cent per annum, payable annually until paid in full, provided that such owner in either of such cases shall have the right at any time to anticipate any or all of such installments. And the City Council shall provide for the payment out of the City Treasury in the case of the improvement of streets of one third of the cost of the proposed improvement, and in the case of the improvement of sidewalks one-half of the cost of the proposed improvement."

Section 2 of the ordinance provides that the assessments shall be a lien upon the property so assessed and shall be entered in an appropriate book, and further provides:

"Such lien shall continue from the date of the entry of the same on such assessment lien book, until five years after the date provided for the final payment, unless sooner paid."

The questions now to be decided are, what is meant by the foregoing language, and when did the assessments fall due and when the lien expired?

▮ The attorneys for the respective parties appeared, filed briefs and fully argued the case before me. In the construction of the ordinance, statute and Constitution, governing these paving assessment liens, we, of course, must look to the construction and law as laid down by the courts of South Carolina. The leading case on this subject is Town of Cheraw v. Turnage, 184 S.C. 76, 191 S.E. 831. The plaintiff contends that this case governs the instant one and relies upon it. The defendant, on the other hand, claims that the Orangeburg ordinance more nearly resembles a paving ordinance of the City of Spartanburg, South Carolina, which has been referred to and passed upon in the cases of Cleveland v. City of Spartanburg, 185 S.C. 373, 194 S.E. 128, and Blake v. City of Spartanburg, 185 S.C. 398, 194 S.E. 124, 125, 114 A.L.R. 395.

It will be noted that in the Orangeburg ordinance it is provided that the owner "may" within thirty days after the completion and acceptance of the improvement pay into the City Treasury the full amount of the assessment, "or" shall have the right to have such assessment divided into ten equal payments. The ordinance is covering two classes of street improvements, namely, the roadway (called street in the ordinance), and the sidewalk and it is quite apparent from a reading of it that when the ordinance further says that the owner "in either of such cases" shall have the right to anticipate any or all of the installments it is referring to the two classifications of sidewalks and roadways.

▮ Under the terms of the Constitution and Enabling Act the City of Orangeburg has full power to provide by ordinance for the terms and methods of payment, and, therefore, we do not have to look further than the language of the ordinance itself to determine when the lien expired. The ordinance provides that the lien shall continue from the date of the entry on the assessment lien book until five years "after the date provided for the final payment, unless sooner paid". It is admitted that the lien was entered and started to run from January 15, 1927. It is clear that the ordinance contemplated two methods of payment since the term "may" is used, and the property owner had the option of paying in full within thirty days or of paying by installments over a period of ten years. In the case of Town of Cheraw v. Turnage, supra, it is pointed out that there was no acceleration clause in the ordinance and the court held that it was proper to construe the ordinance favorably and leniently to all concerned and it was there held that the final payment contemplated by the ordinance would be at the time of the due date of the last installment. Such a construction gives the city a longer life of its lien, and, therefore, a better opportunity to collect; and at the same time it is favorable to the property owner in that he is not forced to raise a large sum of money to pay the entire amount at one time, but can spread it over a series of years.

In the case of Cleveland v. City of Spartanburg, supra (see also the companion case of Blake v. City of Spartanburg, supra), the Supreme Court of South Carolina takes the position that where the option is in the property owner he must exercise one or the other privilege. But a careful examination of that case shows that it is not in conflict with the doctrine of the Cheraw case. In the Spartanburg case the ordinance, and particularly the enabling statute (and of course, they both must be considered), contemplated that the owner must make an initial payment in order to take advantage of the deferred payment plan. This is quite clear from a reading of the Enabling Act referred to and quoted in the Spartanburg case. In that act it was requisite that the owner pay down one-fifth of the amount assessed and upon such payment being made he became entitled to a deferment of the balance. The Supreme Court naturally and properly held that although the ordinance did not contain this language it was embodied in the Enabling Act and the ordinance must be construed in the light of and subject to the terms of the Enabling Act. It is apparent from a reading of the Spartanburg case that the City of Spartanburg intended to grant the deferred payments only on certain conditions and we have to read both the ordinance and the Enabling Act to ascertain this. In paragraph 6 of the Spartanburg ordinance it is provided that the city might issue assessment certificates for the assessments remaining unpaid at the expiration of the time limit for the payment of the assessments in full. Therefore, it

would be necessary for the city to know how much of the cost would be taken care of by cash payments and how much would be taken care of by deferred payments so that it could issue the necessary amount of certificates to raise cash to pay for such improvements. Section 6 of the ordinance also sets out the form of the paving assessment certificate and included in that form is a proviso that the owners of abutting property improvements have acknowledged their indebtedness by the payment in cash of one-fifth of the total assessment and will accept from the city the privilege of paying the amount still due in four equal annual installments. Therefore, it is entirely clear that the ordinance was drawn in contemplation of the terms of the Enabling Act, not merely because the act is referred to in the ordinance, but because it is necessary to read its terms in order to understand fully the terms embodied in the ordinance. In the Spartanburg case the Special Master did not analyze or discuss the Enabling Act at any length, but the Supreme Court in considering his report did and it appears to me that the decision in that case is based solidly upon consideration of the terms of the act and of the ordinance read together. The situation shown by the act and ordinance in the Spartanburg case is quite different from that shown in the Cheraw case. On first reading these cases they might seem to conflict and it has been argued that the Spartanburg case modified, and to some extent overruled, the broad position taken in the Cheraw case. However, a careful consideration and comparison of the two cases show that in the Spartanburg case it was requisite that the owner take some affirmative action and exercise his choice by making a payment and on his failure so to do he was not entitled to claim deferment of the balance of the amount due and that, therefore, the total amount of the assessment became due and was payable within thirty days. On the other hand, had he exercised his option by paying the one fifth then he would have five years within which to pay the balance and final payment would not be due until the expiration of the five-year period.

The Orangeburg ordinance stands entirely alone and a construction of same is not helped or limited by the Enabling Act since the latter is practically the same as the constitutional provision. We, therefore, must consider and base our decision upon the Orangeburg ordinance without limitation or enlargement by any other legislative declaration. The Orangeburg ordinance provides for two methods of payment, one within thirty days and the other within ten years. The property owner is entitled to either and there is no condition or limitation provided as in the Spartanburg ordinance. He is not required to take any affirmative action such as paying a portion, but the right is granted to him to choose whether to pay all at one time or to pay in ten annual installments. In the first case his debt is cancelled and he does not have to pay interest. In the second case he has the benefit of not having to raise a large amount of cash at one time and he can spread his payments over a long period of ten years, but of course he is burdened with interest on the deferred payments. There is no acceleration clause in the ordinance and Section 7376 of the Code of Laws of South Carolina does not require acceleration. Town of Cheraw v. Turnage, supra. This was the main point in issue in the Cheraw case. Some question is raised as to whether this general act applies to the instant case. If the act does apply in the instant case then the Cheraw case governs and in the absence of the City of Orangeburg having declared an acceleration there was none. Of course if the act does not apply then there was nothing to cause acceleration. It is distinctly stated in the Orangeburg ordinance that the owner "may" pay the entire amount within thirty days. If he does not do this he is not required to take any further steps and the city has no right to step in and sell his property and enforce the assessment, since the owner has the right to the deferred payment plan. Of course the city might have a right to enforce such installments as they come due, or on the other hand, it may wait until the due date of the final installment and enforce the entire amount with interest within the time limited by the ordinance as to the duration of its lien, that is to say: within a period of five years from the due date of the final payment. The assessment was fixed and the first payment was due on January 15, 1927. If the entire amount were not paid one-tenth would fall due on January 15, 1927, and one-tenth would fall due on each annual date thereafter, so that the final payment would be due January 15, 1936. The ordinance provided for a five-year lien after such final date and that would carry the

lien to January 15, 1941. This suit was instituted on December 14, 1940.

The Supreme Court of South Carolina has again spoken on this subject in the case of Barker v. Town of Allendale, 203 S.C. 149, 26 S.E.2d 393, where it refers to and quotes from the opinion in the Town of Cheraw v. Turnage, supra, and reaffirms and reiterates the doctrines set forth. In that opinion no reference is made to the Spartanburg case hereinabove referred to. Since the instant case was argued before me, the Supreme Court of South Carolina has again spoken in the case of Johns v. Town of Allendale, S.C., 28 S.E.2d 533. The court in that case states that the facts are similar to those in the case of Barker v. Allendale, supra. It reconsiders all of the facts, circumstances and law cited in that opinion and reaffirms its stand in that and in the Cheraw case. In the Johns case the court specifically refers to Cleveland v. Spartanburg, supra, and Blake v. Spartanburg, supra, and differentiates them.

By all rules of reason and proper statutory construction, as well as the authority of the cases decided by the Supreme Court of South Carolina and hereinabove cited, I am constrained to hold that the second defense set out in the answer, namely, that the case is barred by lapse of time, can not be sustained and such portion of the answer will be dismissed and not considered upon the trial of the cause on its merits. It is

Ordered that the "Second Defense" be stricken from the answer.