## SOUTHERN RY. CO. v. CITY OF ORANGEBURG.

### No. 5288.

Circuit Court of Appeals, Fourth Circuit.

Nov. 11, 1944.

---

[1] See also Dickerson v. Franklin Nat. Ins. Co., 4 Cir., 130 F.2d 35.

Adam H. Moss, of Orangeburg, S. C., and Frank G. Tompkins, of Columbia, S. C., for appellant and cross-appellee.

Hugo S. Sims, of Orangeburg, S. C., for appellee and cross-appellant.

Before PARKER, SOPER, and DOBIE, Circuit Judges.

SOPER, Circuit Judge.

This action was brought by the City of Orangeburg against Southern Railway Company for the foreclosure of a paving assessment lien. The District Judge rendered a judgment for the plaintiff for the amount of the assessment, $6,925.67, with simple interest at 6% from January 15, 1927, 55 F.Supp. 167 and 171. The Railway Company appealed from the entire judgment and the city appealed from so much thereof as allows simple interest only.

The case was first instituted in the Court of Common Pleas for Orangeburg County, South Carolina, and later removed to the District Court. A jurisdictional question was raised and decided for the plaintiff. See 134 F.2d 890. The case is now before us on the merits.

The Railway Company resisted the enforcement of the assessment on the grounds: (1) That the assessment was invalid because under the South Carolina law, such an assessment can be imposed only on the written consent of a majority of the owners of the property abutting on the street to be improved, and such consent was lacking in this case; (2) that the improvement for which the assessment was levied was of no appreciable benefit to the Railway Company; and (3) that the limitation for the collection of the assessment had expired by lapse of time under the provisions of the ordinance of the City of Orangeburg which authorized the levy.

On the first ground, the Railway Company undertook to show that although the petition for the improvement purported to be signed by a majority of four out of seven abutting property owners, the majority was obtained only by dividing the tract of one property owner into three parcels and conveying two of them to different grantees, who were not bona fide owners but held them solely to create the false impression of ownership until the improvement was finished, when the two parcels were reconveyed to the real owner.

On the second ground the Railway Company undertook to show that it had received no benefit from the pavement because the Railway's abutting land consisted of its narrow right of way approximately 3,000 feet long and from 105 to 169 feet wide, traversed by a high fill, ditches and drains, so that the available land was too small for any use other than railroad purposes which were in no way furthered by the new improvement. The case was said to be similar in essential respects to that decided by this court in Carolina & N. W. R. Co. v. Town of Clover, 4 Cir., 46 F.2d 395, where it was held that an assessment for the pavement of a road which paralleled the Railway's right of way did not benefit the Railway in any way and therefore could not be enforced.

These questions are important and would call for careful examination if we were not satisfied that the lien of the assessment, even if originally valid, cannot now be enforced against the Railway Company because the pending suit was not brought until after the expiration of the five year period during which the lien was continued and kept alive by the terms of the assessment ordinance. The ordinance in question was passed by the City Council of Orangeburg on July 12, 1918, pursuant to the authority contained in Art. X, Section 16 of the Constitution of South Carolina of 1895 and Act No. 345 of the General Assembly of the State of 1915, Act March 11, 1915, 29 Stat. at Large, p. 586. Section 16 of Article X of the Constitution empowers the General Assembly of the State to authorize the corporate authorities of the City of Orangeburg to levy assessments upon abutting property for the purpose of paying for permanent improvements on streets, on the written consent of a majority of the owners of the abutting property, and on condition that the corporate authorities pay at least one-third of the total cost. Act No. 345 of the General Assembly of 1915 grants to the City of Orangeburg the authority to levy such an assessment upon the same conditions as are contained in the constitutional enactment.

Section 1 of the ordinance of the City Council of Orangeburg, passed under the authority of these enactments, provides inter alia that an assessment be levied upon any property in the city immediately upon the commencing of permanent improve-

ments upon abutting streets, provided that a majority of the abutting property owners consent in writing and that two-thirds of the cost be assessed against them, and one-third be borne by the city. It is further provided that the assessment against the property owner shall be paid in the following manner:

"Each owner of the property so assessed may within thirty days after the completion and acceptance by City Council of such improvement immediately abutting the property of such owner, pay into the city Treasury the full amount of said assessment, or shall have the right * * * in case of the improvement of streets to have such assessment divided into ten equal payments; the first installment thereof shall be due thirty days after the date of the completion and acceptance by City Council of such improvement immediately abutting his property, and the remaining installments shall be due in equal amounts, due respectively in one, two, three, four, five, six, seven, eight and nine years from the date of the first installment, with interest on such installments, from the date of the first installment, at the rate of six per cent per annum, payable annually until paid in full, provided that such owner in either of such cases shall have the right at any time to anticipate any or all of such installments".

Section 2 of the ordinance provides:

"That all assessments hereby levied shall be a lien upon the property so assessed, and payment thereof shall be enforced in the same manner and with the same costs as the collection of the city taxes is now enforced. All such assessments shall be entered in a book to be kept by the City Clerk and Treasurer, which book shall be entitled 'Assessment Liens,' and which shall state the name of the owner of the property, its location, the amount of the assessment, the time or times for payment, and the payments made. Such lien shall continue from the date of the entry of the same on such assessment lien book, until five years after the date provided for the final payment, unless sooner paid."

The petition of the abutting owners of the property on which the assessment in suit was levied was filed April 10, 1925. On July 20, 1925, the Southern Railway Company, defendant herein, served notice on the city that it objected to the paving, regarded the assessment as invalid, and would not pay it. The pavement was nevertheless laid and accepted by the city by

entry in the assessment book on December 16, 1926. Consequently under Section 2 of the ordinance the laying of the assessment upon the abutting property came into being on that date and continued "until five years after the date provided for final payment, unless sooner paid."

Section 1 of the ordinance provides that each owner of assessed property may within thirty days after the completion and acceptance of the improvement pay the full amount of assessment, or shall have the right to have it divided into ten equal payments, the first to be due thirty days after the completion and acceptance of the improvement and the remaining nine installments to be due in equal amounts annually. In this case the thirty days after the completion and acceptance of the work expired on January 15, 1927, and the due date of the last payment under the installment plan was January 15, 1936. The question for decision is whether the five year period, during which the lien is kept alive by Section 2 of the ordinance, runs from January 15, 1927, or from January 15, 1936. If the period runs from the earlier date the present suit, which was filed December 14, 1940, was too late.

The District Judge, construing the ordinance in the light of the South Carolina decisions, held that although the Southern Railway Company had failed to exercise the option to pay the assessment in installments, and indeed had declared its intention not to pay the assessment at all, the date from which the five year period began to run was the date for the tenth and last payment under the installment plan. We do not think that this conclusion is tenable. It is true that the ordinance gives the property owner, who recognizes the validity of the assessment and is willing to pay it, the choice of paying in full within thirty days from the acceptance of the work or of paying in ten annual installments; but it is not reasonable to conclude in the case of a property owner, who denies all liability, that the city cannot sue for the full amount thirty days after the work has been accepted, but can only sue for each installment, as it becomes due under the installment plan, over a period of nine years. Indeed we think that in any case, whether the property owner has refused to pay the assessment or not, the whole assessment is due at the end of the thirty day period and the limitations began to run from that point of time, unless the

property owner affirmatively exercises the right to pay in installments.

Such was the interpretation placed by the Supreme Court of South Carolina in Cleveland v. City of Spartanburg, 185 S.C. 373, 194 S.E. 128, upon an ordinance of similar character in deciding a similar question of limitations. Section 3 of the Spartanburg ordinance provides that the lien of the paving assessment should continue from its entry on the assessment book until the expiration of five years from the date when the final payment was due. Section 4 of the ordinance provides:

"When said assessment roll has been ratified in the manner above prescribed, each owner of property so assessed may within thirty days after such ratification, pay into the City Treasury the full amount of said assessment, or shall have the right to have such assessment divided into five equal payments, the first installment thereof shall be due thirty days after the date of the ratification of the assessment roll by the City Council, and the remaining installments shall be due in equal amounts, due respectively in one, two, three and four years from the date of the first installment, with interest on such installments at the rate of six per cent per annum, payable annually from date until paid in full."

Commenting thereon, the Supreme Court of South Carolina said, 185 S.C. at page 392, 194 S.E. at page 136:

"It is argued on behalf of the city that the failure of the plaintiff to pay the whole amount of the assessment within 30 days is a substantive fact, evidencing her desire to take advantage of her right to pay in installments. The words 'right to have' (section 4 of the ordinance), with reference to installment payments, contemplate some positive action on the part of the property owner evidencing a choice of option. Nonaction on the part of the property owner does not indicate an election, nor does such inaction, under these circumstances, give to the city the right to make an election for the property owner. Under the ordinance, this right resided in the plaintiff, and it could be given vitality only when she chose to exercise it by complying with the ordinance provisions which conferred it. She did not do so. The ordinance laid no compulsion upon her to do so; nor does it give the city, in the absence of her agreement and compliance, the right to arbitrarily place her in the deferred payment class. Upon her failure to adopt the installment payment plan, which was optional with her, the whole amount of the assessment became payable within the 30-day period allowed. When she failed to pay it, the city's cause of action accrued.

"Under the ordinance, the plaintiff could have adopted either course, but she did neither, and, in our opinion, the city's right of action accrued at the end of the 30-day period, and the life of the lien expired 5 years thereafter, to wit, in 1933."

Obviously, this decision is conclusive of the question under consideration unless the Spartanburg case can be distinguished on other grounds. It is suggested as a distinguishing feature that the enabling statute and the ordinance in the Spartanburg case contemplate that the property owner must make an initial payment of one-fifth of the amount of his assessment in order to take advantage of the deferred payment plan. We do not find such a provision in the enabling act (February 13, 1912, 27 Stat. at Large, p. 557). Its nearest reference to the subject is contained in the concluding words of Section 1 which provide that "times and terms of payment and rates of interest on deferred payments of assessments by lot owners may be agreed upon as prescribed by ordinance." Sections 3 and 4 set out these terms but they do not expressly say that a property owner must pay the first installment of his assessment in order to take advantage of the installment plan.

It is contended, however, that such a condition is imposed by Section 6 which was doubtless enacted to enable the city more easily to borrow money to pay for an improvement on the credit of the unpaid balance due by the property owners. Section 6 refers to the unpaid installments of property owners who select the deferred payment plan, and provides that the city shall issue assessment certificates for the assessment remaining unpaid at the expiration of the time for the payments of assessments in full. It is further provided that the certificates shall contain the statement that the assessment has been levied in compliance with the law and that "owners of the property abutting improvements have acknowledged their indebtedness to the city by the payment in cash of one-fifth of the total assessment against their property as required by law and will accept from the City Council of Spartanburg, South Carolina, as provided in an act of the legislature of the same state, the privi-

lege of paying the amount still due in four equal annual installments with interest at 6 per cent per annum."

The language of Section 6 was referred to by the Supreme Court of South Carolina in the Spartanburg case as further evidence that the enabling act and the ordinance provided an alternative method of payment, and contemplated that a property owner, desiring to pay his assessment in deferred payments, must indicate his intention so to do by paying one-fifth of the assessment to the city. Relying upon these statutory provisions and comments of the Supreme Court of South Carolina, the City of Orangeburg contends that the Spartanburg decision was based upon a legislative requirement that is absent from the Orangeburg ordinance and hence the Orangeburg property owner is under no compulsion to manifest his selection to the installment plan in any way but has the right, free from any condition, to pay the assessment in either way; and therefore the Orangeburg ordinance should be construed so as to give a longer life to the lien for the benefit of the city and a longer time to the property owner to pay his debt.

In this connection reference is made to the decision in Town of Cheraw v. Turnage, 184 S.C. 76, 88–91, 191 S.E. 831, in which it was provided by the assessment ordinance that payments should be made in ten installments and that, upon default in the payment of any installment, the total amount of the assessment unpaid should immediately become due and collectible. It was held that this accelerating clause was not automatic but optional with the city and that unless the city should declare the whole balance of the assessment to be due, the installment arrangement continued in effect and limitations did not begin to run until the due date of the last installment.

In our opinion the present case is ruled by the Spartanburg rather than the Cheraw decision. In both of these cases an option was granted to become effective when exercised by the party for whose benefit it was created. In the Spartanburg case the option to pay on the installment plan was a privilege granted to the property owner and he alone had the power to decide whether he would exercise it or not. It was therefore necessary for him to indi-cate his choice by the affirmative act of paying the first installment. In the Cheraw case the ordinance provided that the assessment should be paid in installments and the option was given to the city to declare the whole unpaid balance of an assessment to be due in case the property owner should default in the payment of any assessment; and it was necessary for the city to exercise its right by making a declaration that because of the default the whole balance of the assessment was due.

In the pending case it is clear that the assessment is payable in full in thirty days, but the property owner is given the option to pay it on the deferred payment plan, and only he can exercise that option by paying the first installment within thirty days after the completion of the work. It is unreasonable from the standpoint of the city or the practical accomplishment of the business to conclude that a property owner prefers the deferred payment plan simply because he takes no action whatsoever. As said in the Spartanburg case, nonaction on the part of the property owner does not indicate an election or give the city the right to make an election. That right resides in the property owner and can be given vitality only when exercised by him. The provision of Section 6 of the ordinance in the Spartanburg case, which has no counterpart in the ordinance in the pending case, does not in any way modify or vitiate this conclusion. That provision was not an enactment that the property owner must pay one of the installments in order to get the privilege of the deferred payment plan. It was a statement or certificate that the property owner had made such a payment and thereby evidenced his acceptance or choice of that privilege. The decision in the Spartanburg case would have been the same even if Section 6 had been omitted from the ordinance. The omission of a similar provision from the ordinance in the pending case does not relieve the property owner of the duty to indicate in some fashion his choice of the installment plan if he desires to make his payments in this way. Since the option was his, it was necessary for him to exercise it in some affirmative fashion.

The suit is barred by limitations and the judgment of the District Court must be reversed.