## THE BALTIMORE AND OHIO RAILROAD *v.* THE CITY OF PARKERSBURG.

APPEAL FROM AND CERTIORARI TO THE CIRCUIT COURT OF APPEALS FOR THE FOURTH CIRCUIT.

No. 305. Argued March 19, 1925.—Decided April 13, 1925.

1. This Court has not jurisdiction of an appeal from the Circuit Court of Appeals where the jurisdiction of the District Court was invoked solely on the ground of diversity of citizenship. P. 36.
2. A Maryland railway corporation, having purchased at foreclosure the property and franchise of a West Virginia corporation, declaring, pursuant to West Virginia statutes, that it "would become a corporation as to said property" by the name of the West Virginia corporation, and having become also the sole stockholder of the latter, sued a West Virginia municipality to enforce an alleged exemption of the property from taxes. *Held*, that the District Court had no jurisdiction, whether the plaintiff were treated as in effect the West Virginia corporation, suing as property owner, or as the Maryland corporation suing as stockholder, since in the latter case the West Virginia corporation would be an indispensable party plaintiff, and in either case diversity of citizenship would be lacking. P. 38.

296 Fed., 74, reversed.

REVIEW of a decree of the Circuit Court of Appeals which reversed a decree of the District Court in favor of the Railroad in a suit to enjoin the City from levying taxes on certain railroad property. The writ of certiorari was granted.

*Mr. Frank W. Nesbit,* with whom *Messrs. James W. Vandervort* and *Mason G. Ambler* were on the briefs, for appellant.

*Messrs. R. B. McDougle* and *F. P. Moats,* for appellee.

Mr. Justice Brandeis delivered the opinion of the Court.

This suit was commenced in the Circuit Court of the United States for the District of West Virginia in 1894. The plaintiff is the Baltimore & Ohio Railroad, alleged to be a Maryland corporation; the defendant is the City of Parkersburg, a West Virginia corporation. The relief sought was to enjoin the levying of taxes assessed upon certain railroad property. The federal jurisdiction was invoked solely on the ground of diversity of citizenship. A temporary injunction issued upon the filing of the bill. In 1895, the case was heard upon demurrer to the bill and upon a motion to dissolve the injunction. In 1897, a decree was entered, which overruled the demurrer, but made no order respecting the injunction. Within 30 days thereafter an answer was filed by leave. Then the cause stood without further action for 23 years. In 1921 activities were resumed leisurely. In 1923, upon demurrers and motions, the District Court for the Northern District of West Virginia (to which the case had been transferred pursuant to § 290 of the Judicial Code) entered a final decree for the plaintiff. The decree was reversed by the Circuit Court of Appeals. 296 Fed. 74. The railroad appealed to this Court. It also filed a petition for a writ of certiorari, consideration of which was postponed until the hearing on the appeal.

The decision in both lower courts was rendered on the merits. These we have no occasion to consider. There is no right of appeal to this Court, because the jurisdiction of the trial court was invoked solely on the ground

of diversity of citizenship. Judicial Code, § 128. The writ of certiorari is granted. But, as the bill does not show that the trial court had jurisdiction of the controversy, the decree of the Circuit Court of Appeals must be reversed with directions to remand the cause to the District Court.

The claim asserted by the bill is this. In 1855, the Northwestern Virginia Railroad Company, a corporation organized under the laws of Virginia, acquired from the Town of Parkersburg an exemption from, or commutation of, municipal taxes on certain property within its limits. In 1863, the railroad and the municipality became domestic corporations of West Virginia, upon the organization of that State. In 1865 the property and franchises of the railroad were purchased by the Baltimore & Ohio at a foreclosure sale. Pursuant to the statutes of West Virginia then in force, the Baltimore & Ohio declared "that it would become a corporation as to said property, by the name of the Parkersburg Branch Railroad Company." The immunity from taxation asserted in the bill was claimed as an incident of the property acquired on foreclosure, and also as having been conferred by ordinances adopted, and contracts made with the Parkersburg Branch Railroad. The levy seems to have been made upon property of that company. It was a West Virginia corporation.[1] The bill sought to enforce its right. The capacity in which the Baltimore & Ohio sued to enforce the right to immunity was not stated clearly in the bill. Apparently it sued either in its capacity as

[1] Code of Virginia 1860, Title 18, c. 61, §§ 28, 29; Constitution of West Virginia (1863), Art. 11, § 8; Baltimore & Ohio R. R. Co., Corporate History (1922), Vol. 1, pp. 243, 247. See *Chesapeake & Ohio Ry. Co.* v. *Miller*, 114 U. S. 176, 182, 185; and Acts of West Virginia, 1891, c. 32, p. 57; 1889, c. 23, p. 81; 1887 (extra session); c. 73, p. 218; 1883, c. 12, p. 13; 1882, c. 97, § 30, p. 277; 1881, c. 17, § 72, p. 237, § 82, p. 240; 1877, c. 106, p. 138; 1872–3. c. 88, § 23, p. 228, c. 227, § 16, p. 724; 1865, c. 73, p. 62.

owner (sole stockholder) of the West Virginia corporation or on the theory that, as to the property purchased on forclosure, it became itself the Parkersburg Branch Railroad Company. In neither view did the trial court have jurisdiction of the controversy.

If the plaintiff sued as the corporate owner of the property, that is, as the Parkersburg Branch Railroad Company, but under the name of the Baltimore & Ohio, the trial court was without jurisdiction as a federal court, because both the Branch Railroad and the defendant were West Virginia corporations, and hence the controversy was wholly between citizens of the same State. If the Baltimore & Ohio sued as the Maryland corporation, owner of all the stock in the Parkersburg Branch Railroad Company, the trial court was without jurisdiction of the controversy, because the latter corporation, an indispensable party plaintiff, was not joined. Compare *Davenport* v. *Dows*, 18 Wall. 626. And it could not have been joined. *Niles-Bement-Pond Co.* v. *Iron Moulders Union*, 254 U. S. 77. For then one of the plaintiffs would have been a citizen of West Virginia; there would no longer have been complete diversity of citizenship; and the jurisdiction of the trial court would have been ousted.

So far as appears, the Branch Railroad was neither merged in, nor consolidated with, the Baltimore & Ohio. Nor was there a compulsory domestication of the latter in West Virginia. *Martin's Administrator* v. *Baltimore & Ohio R. R.*, 151 U. S. 673. We have, therefore, no occasion to consider the questions involved in *St. Louis & San Francisco* v. *James*, 161 U. S. 545; *Louisville, New Albany & Chicago Ry.* v. *Louisville Trust Co.*, 174 U. S. 552; *Southern Ry.* v. *Allison*, 190 U. S. 326, 337; *Missouri Pacific Ry.* v. *Castle*, 224 U. S. 541. Compare *Memphis & Charleston R. R.* v. *Alabama*, 107 U. S. 581; *Patch* v. *Wabash R. R.*, 207 U. S. 277.

It would seem that the District Court must, upon the remand of the case to it, enter a decree of dismissal. But,

as the question whether the trial court had jurisdiction does not appear to have been considered by either of the lower courts and was not discussed by the parties here, our direction to the Circuit Court of Appeals is to remand the case to the District Court for further proceedings not inconsistent with this opinion.

*Reversed.*