**SEELEY et al. v. CORNELL et al.**

No. 8336.

Circuit Court of Appeals, Fifth Circuit.

June 8, 1937.

See, also, Aiken v. Cornell, 90 F.(2d) 567; 6 F.Supp. 241.

T. R. Boone and Kearby Peery, both of Wichita Falls, Tex., for appellants.

A. H. Culwell, Wm. H. Burges, H. L. McCune, and Joseph H. McBroom, all of El Paso, Tex., Chas. A. Holden, of Tulsa, Okl., H. E. Jackson, Chas. Gibbs, and H. O. Williams, all of San Angelo, Tex., Ed. M. Whitaker, of Midland, Tex., and F. H. De Groat, of Duluth, Minn., for appellees.

Before FOSTER, SIBLEY and HUTCHESON, Circuit Judges.

HUTCHESON, Circuit Judge.

When complainants were here before as appellants,[1] it was to complain of a decree dismissing their bill for want of indispensable parties. On that appeal the sole question for decision was whether complainants could, without joining the other heirs of their mother, maintain this suit, the purpose of which was to have Cornell, their agent and attorney, and the other defendants named in the bill, adjudged to be their trustees, and compelled to account to plaintiffs, as to their individual undivided interests in the lands and funds the bill described.

Answering that question in complainants' favor, we ordered the cause remanded for trial on the merits. This time complainants' appeal is from a decree on the merits, denying them all relief and dismissing their bill, as to all defendants except Cornell and Colquitt. As to these defendants the decree denied their prayer to have their deeds to Cornell set aside, and Cornell and the Douglas Oil Company adjudged trustees as to the properties described in it. It, however, adjudged that Cornell had not made an adequate settlement and accounting, and gave judgment for complainants against Cornell and Colquitt jointly for $5,830, and for $27,819.13 against Cornell individually. It further awarded the master $16,000 as compensation and taxed all costs one-half against complainants, one-half against Cornell. Complainants alone appeal.

The decree complained of is based upon findings of a master made, after extended hearings in which the master heard and saw the witnesses, upon a record of around eight thousand pages, containing a vast amount of conflicting and contradictory testimony, and upon findings of the District Judge approving the findings of the master. These findings comprehensively disposed against complainants of all charges of conspiracy, fraud, and overreaching.

In effect acquitting each of the defendants, singly and collectively, of any purpose to defraud, overreach, or deal unjustly by complainants, they rejected altogeth-

564

er the catch-all charge of conspiracy by which complainants sought to involve the defendants in a common fraudulent purpose to despoil. As to the Douglas Oil Company, they in effect determined that in the acquisition of its interests it had used no fraud nor covin. Finding that the company had, throughout, dealt fairly and openly with complainants' mother, with Cornell, their agent and attorney, and with them, both in respect of the original acquisition of the title from complainants' mother, and in the steps it took with complainants' attorney and with them to obtain confirmation and ratification, they rejected as unfounded the claim of fraud and collusion complainants had laid against it.

The claims against Sutton, the judge of of the court, Colquitt, the receiver, Montague, the receiver's attorney, and the American Surety Company, as surety on the receiver's bond, that the receivership proceedings had been conducted fraudulently for the purpose and with the effect of defrauding complainants as heirs of their mother, were rejected too, it being found as a fact that no such purpose or result attended these proceedings, but that, on the contrary, they inured to complainants' benefit.

■ As to the defendant Elliott, employed by Cornell as attorney and agent, it was found as a fact that his services were fairly, faithfully, and efficiently rendered and his compensation was reasonable. As to defendant Cornell, it was found as a fact that in connection with his purchase from complainants he had made adequate disclosures of the nature, condition, and value of their interests, and had paid them full value therefor, but that prior to his purchase he had made expenditures which he ought to be charged with, because, though not fraudulent, they were made unreasonably and improvidently. Unless, therefore, it is made clearly to appear that the fact findings are without support, or that the legal conclusions are in some parts unsupported by them, the decree must stand. Cf. Colquitt v. Roxana Petroleum Corporation (C.C.A.) 49 F.(2d) 1025.

Our opinion on the former appeal sets out the background and the gravamen of complainants' case as their bill states them. Only the briefest summary will be attempted here. This is that Cornell, ostensibly acting as agent and attorney for complainants and other children of Mrs.

Smith, but really acting for himself and the defendants, his coconspirators, had dissipated their mother's estate by selling off and disposing of a large part of her property; had, through pretended settlements, obtained and converted to his and their use large sums of money; and finally, had overreached complainants in buying out their interests for an insufficient value. All this, they say, was accomplished through the instrumentality of the receivership of their mother's property instituted because of her mental incompetency, but converted by Cornell and his confederates into a cat's-paw to procure large sums of money from persons to whom their mother had invalidly attempted to sell portions of her property, only to divert them into the custody and convert them to the use of the conspirators. These sums, they say, were procured by having the receiver to institute cancellation suits, and then, when Cornell had extracted sums of money in settlement of them, all payable to him or his agents, allowing them to be disposed of by judgments against the receiver, the sums obtained being dissipated by Cornell and the conspirators in reckless and extravagant expenditures. Not content with that spoliation, Cornell, they say after their mother's death, made a fraudulent sale to the Douglas Oil Company of the inheritance of complainants and their brothers and sisters, and brought the whole matter to a conclusion by fraudulently and for a wholly inadequate consideration, inducing complainants to sell to him.

Cornell and the Douglas Oil Company, and each of the other defendants, specifically denied these charges. Douglas Oil Company fully pleaded that all that it had done was in a fair and honest effort to protect and perfect the title it had bought from Mrs. Smith; that it had paid full and fair value for the property it purchased, and had dealt with Cornell under powers of attorney from complainants and others without any knowledge or belief that he was in any respect unfaithful to his trust.

It will serve no purpose for us to review here the long record made before and heard by the master. It is sufficient to say that it amply supports his findings as to the good faith of the Douglas Oil Company, and the entire absence from its activities of any fraud or overreaching, and that it supports too, the findings that there was no conspiracy between Cornell and any

 **565**

of the other defendants to defraud complainants. Indeed, the evidence would not reasonably admit of a contrary finding.

██ As to the settlements Cornell made with the vendees of Mrs. Smith, no complaint is made of these as to amounts, and, except to let complainants in to an undivided interest in the lands conveyed to the Douglas Oil Company, no effort was made to undo them. Complainants' general claim and effort was to show that the judge, the receiver, the surety, the attorneys for the receiver, their agent Cornell, his attorney Elliott, the Douglas Oil Company, and those acting for them, had engaged in a general conspiracy to deprive them of an interest in their mother's estate by mishandling moneys obtained through, and in fact belonging to, the receivership, and that after her death Cornell had sold properties to Douglas Oil Company as a part of the same general conspiracy. All that was proven was that, acting for the complainants and others under full and complete powers of attorney, Cornell had in their interest caused the receivership to be instituted, and, still in their interest and in their behalf, had obtained moneys to be paid over by their mother's vendees to him as attorney for complainants, instead of, as complainants now insist should have been done, causing the moneys to be paid into the receivership.

It is quite plain that it was through the medium of suits filed by the receiver that Cornell obtained the money that he got in the settlements. It is quite true too that, judged by results, the receivership was conducted in the interest, not of Mrs. Smith, but of her children who had brought the suit for and procured the appointment of the receiver, and that all of the parties connected with the administration of the receivership regarded it as in aid of the children's interests. If then, Mrs. Smith was in fact, as her children charged her with being, non compos, and if the instruments she made ought to have been set aside because thereof, there is little doubt that her guardian, if she had had one, or her administrator or creditors, might have made serious complaint of the procedure which was adopted. For the claims of the receiver to avoid the instruments she had made were abandoned or adjudicated against him not upon payment to the receiver for her use and benefit, but upon payment to the agent of her children and for their use and benefit,

of sums which, if the receiver's complaint was correct, should have been paid to the receiver for her. Complainants however, who through Cornell caused the receivership proceedings to be brought, and in effect controlled its administration, cannot complain, for the acts were those of their attorney done in their interest. They cannot, in short, having employed Cornell to represent them, and having affirmed what he did by claiming the proceeds of that doing, now claim, as heirs of their mother, against their attorney and themselves for doing what they themselves did. Besides, all of the evidence is to the effect that these settlements were not made with the receiver, that they were made with Cornell in purchase of the children's expectancies, and in settlement of contingent claims the children might bring upon the mother's death. There is no proof that Mrs. Smith was non compos, none that the receiver was entitled to or should have received any of these sums. As the matter stands on the proof and on the findings, Cornell, their attorney, has obtained for complainants moneys which, if he had not made the settlements on their behalf, they would never have obtained through the receivership because of their inability to establish her mental incompetency. Cf. Colquitt v. Roxana Petroleum Corporation, supra.

Every charge against Colquitt and Sutton, Montague and Elliott, Cornell and the surety, of delinquency in not paying over the moneys received in settlement, to, and disbursing them through, the receivership, must, in the light of these facts, fail, for everything that was done, whether rightly or wrongly, was done by complainants through their attorney, was indeed their act, and they may not now, by assuming the character of heirs of their mother, claim against the defendants for fraud for doing the things that they themselves, through their attorney, caused to be done.

In the light of these considerations all the lurid charges of conspiracy, in connection with the receivership, fall and fail, for what was done by Cornell in respect of the receivership was in law done by and for them; but these considerations aside, nothing in the record challenges the findings of fact of master and judge acquitting all of the defendants in respect of these charges of fraudulent or dishonest motives or intent.

█ As to the surety company, there is not a syllable of evidence in the record that it ever had any knowledge or notice that it was other than a surety on a receivership bond in a receivership conducted in the ordinary and usual way, and, in addition, it having been discharged as surety by a final court order, may not thus collaterally be held to account for its suretyship.

█ We come now to the complaint against Cornell, and to the findings of the master and the judge that though no fraud or overreaching was shown in connection with obtaining the deeds from complainants to him, Cornell had not made a full and complete accounting of his stewardship and must stand in judgment for their interest in moneys unreasonably and unjustly expended and disbursed by him.

We are unable to agree with either the findings of fact or the conclusions of law of master and judge here. The instruments which complainants seek to set aside purport not merely to convey an interest in the property, but also to constitute a complete settlement and acquittance of Cornell. They should stand or fall as a whole. They cannot be good in part and bad in part. If they were executed after and upon the full and fair disclosure which an agent, and especially an attorney, should make to his client, if the sums paid were fair compensation for the interests conveyed and the controversy was settled by the instruments, there should be no undoing of them; they should stand as written.

But we do not think they should stand. The heaviest kind of burden rests upon one situated like Cornell when he comes to settle with, especially when he comes to buy from, his clients. Parkerson v. Borst (C.C.A.) 264 F. 761. Both master and judge have found that he has not fully accounted to them. We think the evidence overwhelms that he purchased from them without that full disclosure to, and understanding by, them of the transaction which is essential in dealings of this kind; and further, we think it overwhelms that the trade was not fair to them, and that it cannot stand. The burden was not on the complainants to show that Cornell had overreached them. The burden was heavy upon him to show that he had not done so. He could not stand in court against their demand without showing that he had made the fullest kind of accounting as to what of theirs he had in his hands, had made

the fullest kind of showing that the consequences of their having deeded to him were not to their disadvantage. Upon the findings of court and master the transaction he defends did result to their disadvantage to the extent of his getting a conveyance and acquittance from them for a consideration not much more than one-half of what was their clear due. But in addition, the taking of the deeds under the circumstances then existing, particularly the immediate prospect of closing the Douglas transaction which would give him large sums of money, and leave him with an overriding oil interest of 7½ per cent. and a surface interest of 20 per cent., required the fullest disclosure then, the clearest proof now, that the trade was not disadvantageous to them. We think it plain that in both respects there is a failure of proof, and that the instruments cannot stand.

Nor can we agree with the finding as to Mrs. Cornell and the liability of her estate. She stands as Cornell does. She and her estate hold in trust for complainants, as he would have held it in trust, the property he sought to buy from them. She and her estate stand liable, as he and his estate stand liable, for moneys and properties of complainants which she has had, and does not account to them for.

The decree therefore is affirmed as to all of the defendants except as to Cornell and Mrs. Cornell. As to these two defendants it is reversed, with directions to set aside, cancel, and hold for naught complainants' deeds and settlement agreements, which, though ineffective on their face as deeds for want of a named grantee, are by the pleadings and the facts conclusively shown to have been made to Cornell. It is reversed too, with directions to require a full and complete accounting from the estates of Cornell and Mrs. Cornell, determining and establishing complainants' interests in all moneys and properties in their hands, and providing for a money judgment against both estates for all of such moneys and properties for which they do not satisfactorily account.

By a supplementary transcript complainants bring up for review an order of the court entered after the perfecting of the appeal. This amended the provision of the decree as to the master's compensation by specifically providing that it be taxed "as costs" and directing that, while the charge of the compensation should be ultimately borne one-half by complainants

and one-half by defendant Cornell, complainants should be primarily responsible to the master for not only the half they were adjudged ultimately to pay, but for such portion of Cornell's one-half as remained unpaid, with judgment over in their favor against Cornell.

The point made against the order is that, entered at a subsequent term and after the appeal had been perfected, the court was without jurisdiction to make it.

The master, calling our attention to the fact that his motion on which the order was entered, though not acted on until the following term, was filed and taken note of before the term had ended, insists that the court retained control over its judgment, notwithstanding the appeal. Thus both complainants and master present the matter as though the effect of the order was a retaxation of costs as between the parties, undertaken after the perfecting of the appeal.

The proper view as to the taxing of costs as between the parties is that the costs of trial should abide the event, Berthold v. Burton (C.C.) 169 F. 495, and that the reversal of a decree opens the whole matter of costs, First National Bank of Atlanta v. Southern Cotton Oil Co., (C.C.A.) 86 F.(2d) 33.

But what is here in question is not the ultimate taxation of costs as between the parties, but the fixing of the compensation of the master, and its charging upon the parties in the cause as the court shall direct under Equity Rule 68, 28 U.S.C.A. following section 723. This rule gives the district court discretion to fix the compensation and to charge it upon the parties as the court shall direct, and authorizes an attachment for the amount against the party charged.

As at first entered, the decree merely fixed the master's compensation, but neither by fixing it as costs nor otherwise did it undertake to direct against whom it should be charged, and by whom it should be paid. We think that, in making the order charging the unpaid portion of the master's compensation primarily against complainants, upon whose motion and at whose instance the master was appointed, the court acted with jurisdiction, and in the exercise of a sound discretion. The order is affirmed.

Affirmed in part, and in part reversed and remanded.