## CALCOTE v. TEXAS PAC. COAL & OIL CO.

No. 11549.

Circuit Court of Appeals, Fifth Circuit.

July 31, 1946.

Rehearing Denied Sept. 10, 1946.

Writ of Certiorari Denied Nov. 18, 1946.

See 67 S.Ct. 205.

HUTCHESON, Circuit Judge, dissenting.

Chas. F. Engle, of Natchez, Miss., and Forrest B. Jackson, of Jackson, Miss., for appellants.

William H. Watkins, of Jackson, Miss., and David B. Trammell and Eugene T. Adair, both of Fort Worth, Tex., for appellee.

Before HUTCHESON, HOLMES, and LEE, Circuit Judges.

HOLMES, Circuit Judge.

This action was brought by appellants to cancel a lease to explore for oil, gas, and other minerals. A counterclaim was filed by appellee (defendant and leaseholder) to declare and confirm its rights under the lease. The decisive question presented on this appeal is whether the lease, which was obtained by appellee while it was unlawfully doing business in Mississippi as a foreign corporation, was ratified by the innocent party, or adopted by mutual consent, after the guilty party to the contract had become legally qualified to do business in the state.

The lease was executed on June 1, 1939. It was in standard form, and was to run for a primary term of ten years from date, conditioned upon the payments of annual

delay-rentals, which were to be excused during the period of production. On January 2, 1940, the appellee qualified to do business in Mississippi. In May, 1940, 1941, 1942, 1943, and 1944, respectively, the appellee mailed to appellants checks for the annual delay-rentals of $60. These checks and the accompanying letters made specific references to the lease. The checks were endorsed and cashed; each time a receipt at the foot of the letter was signed by appellants.

The court below found that the lease was executed while the appellee, a foreign corporation, was engaged in business in Mississippi without having qualified to do so as required by the state statute.[1] The court held that the appellants ratified the lease by accepting the delay-rentals and disposing of the greater part of their royalty interests after the appellee had become legally qualified to do business in the state. The correctness of this ruling is questioned on appeal.

■ Appellants argue that under local law[2] the lease was void when executed, and being void was not subject to ratification. Appellee contends that the lease was voidable, not void, and being voidable could be and was ratified. The primary question for decision on the merits is as to the validity of the lease. It appears that mineral interests in the land were conveyed, subject to the lease, by appellants to several grantees who were not made parties plaintiff or defendant.

■ On the threshold of this appeal is the decisive issue as to whether these royalty grantees were indispensable parties. According to the record, they acquired from the Calcotes an interest, not only in the royalties reserved by them as lessors in the lease to the appellee, but also in any other lease that might be executed by them covering the land in question. They are, therefore, interested in the prayer for the cancellation of the lease, since cancellation would destroy their royalties existing in praesenti, and the Calcotes might not see fit to make another mineral lease or to

develop and operate the aforesaid lands for minerals. On the other hand, while improbable, it may be to the advantage of the royalty grantees to have the lease confirmed. This is not a question of law but of fact, and there is no evidence in the record to give the answer to it, because the royalty grantees have not been made parties to this action. The fact that their interests may not have been prejudicially affected by the final judgment below, which was rendered after a trial on the merits, is not controlling, because the question of indispensable parties, and particularly of diversity jurisdiction, does not depend upon the result of the suit. The true test is the situation that existed before and not after entry of the final judgment.

■ In diversity cases, the question of indispensable parties is inherent in the issue of federal jurisdiction, the determination of which should never await a decision on the merits if the complaint states a cause of action. Jurisdictional questions come first in the orderly disposition of a case. A precarious jurisdiction that limits the scope of judicial decision on the merits cannot be entertained. The same limitation would restrict review on appeal, even on certiorari, and no one could tell whether the court had jurisdiction until it had determined the merits of the controversy. The cases cited by appellee in its supplemental brief, to the effect that the judgment rendered would not interfere with any rights of the royalty owners, may be distinguished from the instant case because they have reference to rights that would continue to exist irrespective of the outcome of the suit.

■ It is argued that appellee has not raised the question, and that appellants may not now object, having brought the suit without joining indispensable parties as plaintiffs or defendants; but it was within the power of the court below to raise the issue of its own motion, since federal jurisdiction depended wholly upon diversity of citizenship and it was impossible to determine whether such diversity existed unless all indispensable parties were before the

---

[1] Section 5343 of Miss.Code of 1942.

[2] The mineral lease covers land located in Mississippi; the contract was made in Mississippi; it was to be performed there; consequently its validity is governed by the laws of that state.

court and the citizenship of each was a matter of record. Section 50 of the Judicial Code[3] and rule 19(b) of the Federal Rules of Civil Procedure, 28 U.S.C.A. following section 732c, do not apply to indispensable parties, who must be made parties to the suit even though this will defeat federal jurisdiction.[4]

 Subject to the provisions of rule 23 and subdivision (b) of rule 19, subdivision (a) of rule 19 provides that "persons having a joint interest" shall be made parties and be joined on the same side as plaintiffs or defendants. If a person who should join as a plaintiff refuses to do so, he may be made a defendant or, in proper cases, an involuntary plaintiff.[5] What then constitutes the joint interest of appellants and their royalty grantees?

 By separate royalty deeds the Calcotes sold, granted, and conveyed unto one Stechol an undivided 1/16 interest, unto Smith an undivided 1/2 interest, and unto Wherritt an undivided 3/16 interest, in and to all the royalty, gas royalty, and royalty in casinghead gas, gasoline, and royalty in other minerals in and under, and that may be produced and mined from, the following described lands (describing them), together with the right of ingress and egress at all times for the purpose of mining, drilling, and exploring said lands for oil, gas, and other minerals, and removing the same therefrom. These grants ran for 20 years and as long thereafter as oil, gas, or other minerals, were produced in paying quantities. Each grant provided:

"Said land, or portions thereof, being now under oil and gas lease executed in favor of The Texas Pacific Coal and Oil Company it is understood and agreed that this sale is made subject to the terms of said lease, but covers and includes one-half [one-sixteenth, or three sixteenths, respectively,] of all the oil royalty, and gas royalty, and casinghead gas and gasoline royalty and royalty from other minerals or products, due and to be paid under the terms of said lease."

Under these deeds the grantees acquired the right to participate in the royalties under the present lease and under all future leases. Their right is restricted to a portion of the minerals produced, with no right to join in future leases or to receive any part of the bonus or delay-rentals. Their interest is a perpetual nonparticipating fractional royalty in the oil, gas, or other minerals, that may be produced from said lands.[6]

Doubtless all will admit that the Calcotes have only an undivided one-fourth of one-eighth royalty in the minerals so long as the present lease is in force and effect. It is a fractional mineral interest in the whole tract distinct from their contingent reversionary interest.[7] It would not be possible to cancel this lease without destroying the undivided three-fourths royalty interest therein owned by the above named individuals who have not been made parties to this suit. Therefore no decree can be entered in this case in accordance with the prayer of the complaint without annulling the vested rights of absent parties whose presence might deprive the court of jurisdiction. The leasing contract was an entirety, and from its nature could not be cancelled as to the Calcotes and allowed to stand as to the other royalty owners. The lessors and their grantees were, technically and beneficially, joint owners of a common property, each with an undivided interest in every particle of the minerals. None of them owned a single molecule in severalty. The relation of the royalty grantees to the con-

---

[3] 28 U.S.C.A. § 111.

[4] Cameron v. McRoberts, 3 Wheat. 591, 4 L.Ed. 467; Shields v. Barrow, 17 How. 130, 15 L.Ed. 158; Kendig v. Dean, 97 U.S. 423, 24 L.Ed. 1061; Gregory v. Stetson, 133 U.S. 579, 10 S.Ct. 422, 33 L.Ed. 792; New Orleans Waterworks v. City of New Orleans, 164 U.S. 471, 17 S.Ct. 161, 41 L.Ed. 518; Niles-Bement-Pond Co. v. Iron Moulders Union, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145; United Shoe Machinery Co. v. United States, 258 U.S. 451, 42 S.Ct. 363, 66 L.Ed. 708; Commonwealth Trust Co. of Pittsburgh v. Smith, 266 U.S. 152, 45 S. Ct. 26, 69 L.Ed. 219.

[5] Rule 19(a) of Federal Rules of Civil Procedure.

[6] Armstrong v. Bell, Miss., 24 So.2d 10, 12. Cf. Schlittler v. Smith, 128 Tex. 628, 101 S.W.2d 543.

[7] Koenig v. Calcote, Miss., 25 So.2d 763. Cf. Keegan v. Humble Oil & Refining Co., 5 Cir., 155 F.2d 971.

troversy over the validity of this lease was so direct and vital that no adequate judgment could be entered without affecting their interests. If it had been cancelled as to the Calcotes, it would have been cancelled as to their grantees, because a royalty interest under an invalid lease is a nullity. Since it was confirmed as to the Calcotes, it stands confirmed as to the grantees in practical effect, as only the lessee can explore the lands for minerals during the term of the lease. We are unable to say that the royalty grantees were not injuriously affected by confirmation of the lease. They were entitled to be heard on the subject. Their presence was absolutely, not conditionally, necessary.[8] No court can directly adjudicate upon a person's rights without such person being actually or constructively before it.[9]

■ The counterclaim, whether federal jurisdiction of it be ancillary or independent, must fail for the same reasons. It would be hard to find a better illustration of indispensable parties than is afforded by the instant case. It is not the reversionary interest in the land, but the leasehold, that is the subject matter of this suit. It is the estate held by virtue of the lease that is sought to be destroyed by cancellation of the lease, and the grantees' interest in that estate is three times as great as appellants'. The leasehold estate is a determinable fee distinct from the reversionary interest in the land, and the right to receive royalty payments is a distinguishable legal interest,[10] which was reserved by appellants out of the leasehold estate; but a royalty may also be created prior to any lease.[11]

■ By separate royalty deeds, as we have seen, the Calcotes sold and conveyed unto their said several grantees not only an undivided interest in the royalty carved out of the present lease but also in a royalty to be carved out of all future mineral leases as well as out of any mineral production by the owners. Whatever estate in the minerals was acquired by virtue of the present lease vested in praesenti.[12] The right to receive a portion of the minerals produced under the lease was also a vested interest in praesenti distinct from the royalty created prior to future leases and future production. The absent royalty owners not only have a distinguishable legal interest in praesenti but a distinct vested interest in futuro; and there can be no enjoyment of

---

8 Davenport v. City of Dows, 18 Wall. 626, 21 L.Ed. 938; Williams v. Bankhead, 19 Wall. 563, 22 L.Ed. 184; Central R. of N. J. v. Mills, 113 U.S. 249, 5 S.Ct. 456, 28 L.Ed. 949; Wilson v. Oswego Tp., 151 U.S. 56, 14 S.Ct. 259, 38 L.Ed. 70; Massachusetts & Southern Const. Co. v. Cane Creek Tp., 155 U.S. 283, 15 S.Ct. 91, 39 L.Ed. 152; California v. Southern Pac. Co., 157 U.S. 229, 15 S.Ct. 591, 39 L.Ed. 683; State of Texas v. Interstate Commerce Commission, 258 U.S. 158, 42 S.Ct. 261, 66 L.Ed. 531; Baltimore & O. R. Co. v. City, of Parkersburg, 268 U.S. 35, 45 S.Ct. 382, 69 L.Ed. 834; Moore's Federal Practice, Vol. 2, pp. 2144–2159.

In Shields v. Barrow, supra, the court said, 17 How. at page 140, 15 L.Ed. 158: "A bill to rescind a contract affords an example of this kind. For, if only a part of those interested in the contract are before the court, a decree of rescission must either destroy the rights of those who are absent, or leave the contract in full force as respects them; while it is set aside, and the contracting parties restored to their former condition, as to the others. We do not say that no case can arise in which this may be done; but it must be a case in which the rights of those before the court are completely separable from the rights of those absent, otherwise the latter are indispensable parties."

Barney v. City of Baltimore, 6 Wall. 280, 18 L.Ed. 825, where part owners or tenants in common of real estate were held to be indispensable parties to a partition suit. To the same effect, see Torrence v. Shedd, 144 U.S. 527, 12 S.Ct. 726, 36 L.Ed. 528.

In Roos v. Texas Co., 2 Cir., 23 F.2d 171, certiorari denied, 277 U.S. 587, 48 S.Ct. 434, 72 L.Ed. 1001, the court said, at page 172: "Rescission of a contract, or declaration of its invalidity, as to some of the parties, but not as to others, is not generally permitted." Citing among others, the following from the Fifth Circuit: Vincent Oil Co. v. Gulf Refining Co., 195 F. 434.

9 Mallow v. Hinde, 12 Wheat. 193, 198, 6 L.Ed. 599.

10 Koenig v. Calcote, Miss., 25 So.2d 763, 765.

11 Armstrong v. Bell, Miss., 24 So.2d 10, 12.

12 Lloyd's Estate v. Mullen, etc., Co., 192 Miss. 62, 4 So.2d 282, 288.

the latter estate until the termination of the former. The cancellation of the present lease would destroy their vested interest in praesenti, whereas a declaration of its validity would either destroy absolutely their vested interest in futuro or postpone the enjoyment of it indefinitely. Vested interests of absent parties, therefore, will be directly and vitally affected regardless of the outcome of this litigation.

This case is to be distinguished from one where the plaintiff has wholly failed to state a cause of action. If, as a matter of law, a cause of action is not stated on the face of the complaint, an inquiry as to the absence of indispensable parties is unnecessary or, to use the words of the Supreme Court, wholly gratuitous. In Bourdieu v. Pacific Oil Co., 299 U.S. 65, 57 S.Ct. 51, 81 L.Ed. 42, where the bill entirely failed to state any cause of action and the rights of absent parties were in no way threatened, the court held that it would be a waste of time to consider the question of indispensable parties, and dismissed the bill on the merits; but the court specifically stated that such inquiry would have been entirely proper under a good bill. This decision merely applied the maxim that the law does not require any one to do vain or useless things.[13] Moreover, a federal question was presented as an integral part of the case, and the court's jurisdiction was unfettered except by general principles of law and equity.[14]

---

[13] Lex neminem cogit ad vana seu inutilia peragenda. 5 Co. 21, Wharton's Legal Maxims, p. 252, No. 368.

[14] Sneed v. Phillips Petroleum Co., 5 Cir., 76 F.2d 785, wherein the dissenting judge wrote the opinion of the court as well as his own, is an authority by this court that cannot be ignored. There federal jurisdiction depended solely upon diversity of citizenship. It was a suit by one of the owners of gas in a common pool to restrain the taking of gas therefrom for wasteful uses. The court held that the lessor of the defendant and the cotenant of the plaintiff were indispensable parties. Equity to prevent a multiplicity of suits was not invoked; but injunctive relief against a continuing wrong was sought to restrain the defendant from flowing its wells except to utilize the gas for light or fuel. The action was based solely upon the conservation laws of Texas, and neither the validity of the lease nor the construction thereof was involved.

The plaintiff alleged that the lessee was doing an illegal act, committing a tort, which was causing him irreparable damage. It did not appear(1) that the lease provided for the taking of gas for the uses mentioned, or for any particular use or purpose. The issue was not what the lease authorized the lessee to do but what the laws of Texas prohibited any owner or lessee from doing. No vested right under the lease was threatened; the attack was upon the asserted right of any proprietor under the general law to take gas for wasteful uses or for any use other than light or fuel. The lessor of the defendant and the cotenant of the plaintiff, as well as all others similarly situated, were interested in this issue, though they would not be bound by the decision; but one is not an indispensable party merely because questions of law and fact in which one is interested will necessarily be adjudicated in a pending suit, and become a legal precedent in future cases.(2)

The principle of the maxim, sic utere tuo ut alienum non laedas, applies to the public, and to public rights, as well as to individuals and to individual rights; and it applies in such manner as that when any such right is violated, whereby damage is sustained, a right of action accrues.(3) As to the natural resources of a state, the title to which has become vested in private persons, the maxim may be extended by general law so as to provide that you shall so use your own property as not to injure your neighbor's or to waste your own. The maxim in its ancient form may be illustrated by the obstruction or diversion on your own land of water that has been accustomed to flow, and ought to flow, on to your neighbor's land; also by the maintenance of a nuisance on one's premises that infects the air or corrupts the waters of one's neighbor.

Where the lessee is committing the nuisance or other tort, he is liable to be sued, and a court of equity will interfere by injunction to prevent a continuance of such acts. A lessee who drills or operates gas wells on leased premises in violation of the conservation laws of a state, thereby wrongfully causing injury to his neighbor's property, is not only liable in damages for the injury done but may be enjoined from a continuation of such wrongful conduct.

This analysis of the Sneed case deals only with the holding of the court that the lessor of the defendant and the cotenant of the plaintiff were indispensable

In the instant case, where the complaint states a cause of action and federal jurisdiction depends wholly upon diversity of citizenship, there can be no dispensing with

parties to a suit to restrain the lessee from an alleged violation of the general law of Texas, which was causing continuous damage to the plaintiff.

Authorities collated in Sneed v. Phillips Pet. Co., 5 Cir., 76 F.2d at page 789, are cited to sustain the contention that the failure to join indispensable parties is not jurisdictional. Turning to said page 789, we find that these authorities are collated in the dissenting opinion, and that one of them is Elmendorf v. Taylor, 10 Wheat. 152, 6 L.Ed. 289, wherein a tenant in common was permitted to sue in equity to obtain a conveyance of land without making his cotenants parties to the suit. In the discussion of the point, the court did not use the words necessary or indispensable parties; but, since the presence of the absent cotenants was dispensed with, it follows that they were held to be not indispensable parties. Another decision cited 76 F.2d at page 789 was General Investment Co. v. N. Y. Central Railroad Co., 271 U.S. 228, 46 S.Ct. 496, 70 L.Ed. 920. In this case jurisdiction did not depend solely upon diversity of citizenship. On the contrary, the court expressly held that the suit was essentially one arising under the laws of the United States. The only other decision among the authorities collated on this point, 76 F.2d at page 789, was Commonwealth of Pennsylvania v. West Virginia, 262 U.S. 553, 43 S.Ct. 658, 67 L.Ed. 1117, 32 A.L.R. 300. This was a suit by sovereign states to enjoin the state of West Virginia from enforcing an act of its legislature. Of such a controversy the Supreme Court had exclusive original jurisdiction, and the decision is not applicable to a question relating to the diversity jurisdiction of the federal district courts.

In Niles-Bement-Pond Co. v. Iron Moulders Union, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145, the court held that federal jurisdiction depended upon, and was defeated by, the decision that the subsidiary corporation was an indispensable party to the suit, and should be realigned as a party plaintiff. Therefore, the question of indispensable parties was necessarily held to be jurisdictional in that case. See also note 11, p. 2146, of Moore's Federal Practice, wherein the author says that the principle of the Bourdieu case, indiscriminately applied would be dangerous. In the Bourdieu case, as above noted, federal jurisdiction did not depend solely upon diversity of citizenship.

Briefly to notice the other decisions cited to sustain the theory that the question of indispensable parties is not jurisdictional. Sun Insurance Co. v. Scott, 284 U.S. 177, 52 S.Ct. 72, 76 L.Ed. 229; Home Ins. Co. of New York v. Scott, 6 Cir., 46 F.2d 10: Actions for money judgments by an insured against several fire insurance companies. A mortgagee of an insured was not an indispensable party, because his interest was not necessarily affected, and the court could frame its judgment so as to protect the mortgagee's interest in the policies. If the insurance companies had been suing to cancel the policies, which they were not, we would have had a case more like the one at bar.

In Seeley v. Cornell, 5 Cir., 74 F.2d 353, the court announced the general rule, and held that the absent parties were not indispensable, saying that it was within the power of a court of equity to deprive a party of the benefit of a deed or judgment obtained by fraud without setting it aside. The appellate court differed from the district court in that the latter "thought a decision involved the setting aside of deeds," 74 F.2d at page 356. See opinion of the learned district judge, Seeley v. Cornell, D.C., 6 F.Supp. 241.

In Seeley v. Cornell, 5 Cir., 90 F.2d 562, we find nothing to sustain the theory that the question of indispensable parties is not jurisdictional in diversity cases.

In Spring v. Ohio Oil Co., 5 Cir., 108 F.2d 560, the absent parties were held to be not indispensable, since no relief was sought against them and a decree could be framed to protect them. Seeley v. Hunt, 5 Cir., 109 F.2d 595, is not at all applicable. The point we are considering was not even discussed, it being the third appeal of another case abstracted in this note. On a prior appeal the court had ordered a full and complete accounting.

State of Washington v. United States, 9 Cir., 87 F.2d 421, also cited in the dissenting opinion, was a suit by the United States against certain parties, alleging that they had trespassed upon Sand Island, and would continue to do so unless enjoined. The Court held that the State of Washington was an indispensable party, but said that the absence of such party was not jurisdictional. It was not jurisdictional because there the suit was brought by the United States, and the federal district court had original jurisdiction without regard to the

an inquiry as to the absence of indispensable parties. The judgment appealed from is reversed, and the cause remanded for further proceedings not inconsistent with this opinion.

HUTCHESON, Circuit Judge (dissenting).

The principles governing the determination of whether parties are indispensable or merely necessary are apparently simple and constant. In applying them, however, in individual cases, the decisions have made, and are making, it increasingly difficult for courts to say categorically and with the voice of authority who are and who are not indispensable parties.[1] It might be supposed then that in the general confusion I should regard myself as without sure guide and compass and as compelled, therefore, to concur in, rather than dissent from, the considered judgment of my associates, that Calcote's royalty grantees were indispensable parties whose absence requires a reversal of the cause. But my concession that the decisions have caused confusion has not gone so far as to admit that the fog is impenetrable. Certainly I have not admitted that I see the question this record presents as "through a glass darkly" and not face to face. On the contrary, I think I see it and its answer quite clearly, and, because I do, I feel obligated not only to dissent from an opinion which I regard as adding to the confusion but to give my reasons quite simply and briefly for doing so.

It is undeniable that the statements in Shields v. Barrow, 17 How. 130, 15 L.Ed. 158, which are so often quoted with assurance as authority for opinions which answer the same questions on the same state of facts in wholly different ways, are rather dogmatic in nature. But it is equally undeniable that "there is no prescribed formula for determining in every case whether a person or corporation is an indispensable party or not," Niles-Bement-Pond Co. v. Iron Moulders Union, 254 U.S. 77, 41 S.Ct. 39, 65 L.Ed. 145. The truth of the matter is that the classification of parties as necessary or indispensable depends entirely upon the particular facts of each case and that the same facts should produce the same holding. Further, though some of the decisions exhibit more than a little confusion about it, it is undeniable that the error in non-joinder of parties, either necessary or indispensable, is not jurisdictional.[2] Finally, it is clearly settled that even if a party is indispensable, his absence from a suit will not be ground for dismissing it or reversing a judgment in it, if it clearly appears that no relief can be, or has been, obtained in the suit which injuriously affects his interest.[3] In this case the plaintiffs have elected, as I think they had a right to do, to sue without joining their mineral vendees, and the defendant, having the same right, has elected to maintain its cross action without joining them. The judgment below went in favor of the continuance of the lease whose cancellation was sought in plaintiffs' suit and whose confirmation and affirmance was sought in defendant's cross bill. Neither plaintiffs-appellants, nor cross-plaintiff-appellee are here complaining of the absence of parties. This court of its own motion raises and presses the point that the mineral grantees were indispensable parties, contrary, I think, to the settled jurisprudence

---

citizenship of the parties. 28 U.S.C.A. § 41, subd. (1). It is only where jurisdiction depends solely upon diversity of citizenship that the absence of indispensable parties absolutely defeats federal jurisdiction. In analyzing federal decisions, we must keep this distinction constantly in mind to avoid being confused by them. This is also true in considering the decisions of state courts on the subject of indispensable parties.

(1) De non apparentibus et non existentibus eadem est ratio. 5 Co. 6. Of things which do not appear, and things which do not exist, the rule in legal proceedings is the same. Wharton's Legal Maxims, p. 73.

(2) Oxley v. Sweetland, 4 Cir., 94 F. 2d 33.

(3) Wharton's Legal Maxims, p. 195.

[1] Cf. Moore's Federal Practice, Chapter 19, pp. 2133–62.

[2] Sneed v. Phillips Pet. Co., 5 Cir., 76 F.2d at page 789 and authorities collated. State of Washington v. United States, 9 Cir., 87 F.2d at page 427.

[3] Sneed v. Phillips Pet. Co., supra; Bourdieu v. Pac. Oil Co., 299 U.S. at pages 70, 71, 57 S.Ct. 51, 81 L.Ed. 42.

of this Circuit[4] and elsewhere.[5] Thus the majority in reversing the judgment on the ground that the mineral grantees were indispensable and their absence requires a reversal holds, and in effect declares, that though the original parties to the lease were satisfied below to try out between themselves the issues arising on the lease and are satisfied here to try out whether the judgment was right on the merits and should be affirmed or was wrong on the merits and should be reversed for a new trial, they may not do so. It seems clear to me that this view is untenable. I think that the mineral vendees are not indispensable parties and that since their joinder was neither sought by appellants or appellee nor required by the court, the judgment ought not to be reversed merely because they were not made parties. But if they could be regarded as indispensable parties to the suit is originally filed, it is quite plain, I think, that the failure to make them parties was not an error for which the suit should be reversed. The attack upon the lease failed. The judgment confirmed instead of cancelling it. It, therefore, did not and could not possibly affect the rights of the mineral grantees who claim under the lease. In this situation, it seems to me a vain thing to reverse for the absence of parties a judgment whose rights it does not adversely affect. I respectfully dissent.

## On Petition for Rehearing.

### HOLMES, Circuit Judge.

■ The question of indispensable parties is primarily a matter of equity jurisprudence,[1] sometimes of due process of law; but the bringing in of such parties may present a federal jurisdictional question if federal jurisdiction depends wholly upon diversity of citizenship. Therefore, we said that the question of dispensable parties was inherent in the issue of federal jurisdiction.

■ In the absence of parties and without their having an opportunity to be heard, a court is without jurisdiction to make an adjudication concerning them;[2] but where the controversy may be determined without prejudice to the rights of absent parties who are beyond its jurisdiction, it will be done; and a court of equity will strain hard to reach that result. It was so held in Bourdieu v. Pacific Western Oil Co., 299 U.S. 65, 57 S.Ct. 51, 81 L.Ed. 42, but there the court had jurisdiction on the ground of a federal question, and from a federal jurisdictional standpoint it was immaterial whether the absent party was brought in or not.

---

4 Spring v. Ohio Oil Co., 5 Cir., 108 F.2d 560; Seeley v. Cornell, 5 Cir., 74 F.2d 353; Id., 5 Cir., 90 F.2d 562; Seeley v. Hunt, 5 Cir., 109 F.2d 594.

5 Home Ins. Co. v. Scott, 6 Cir., 46 F.2d 10; Id., 284 U.S. 177, 52 S.Ct. 72, 76 L.Ed. 229.

1 The duty of the court to raise the question of its own motion is well settled. In Hoe v. Wilson, 9 Wall. 501, 19 L.Ed. 762, in delivering the opinion of the court, Mr. Justice Swayne said, 9 Wall at pages 503, 504, 19 L.Ed. 762: "But Zephania Jones, the complainant in the suit in which the decree of sale was made, and the other heirs-at-law of Ann R. Dermott, are indispensable parties. No relief can be given in the case before us which will not seriously and permanently affect their rights and interests. According to the settled rules of equity jurisprudence the case cannot proceed without their presence before the court. The objection was not taken by the defendant, but the court should, sua sponte, have caused the bill to be properly amended, or have dismissed it, if the amendment were not made. Instead of this being done the cause was heard and decided upon its merits. This was manifest error."

The reason for the application of the rule in this case is that while the district court had potential jurisdiction to cancel or confirm the lease, it did not have complete active jurisdiction to do either in the absence of indispensable parties. Therefore, in raising the question of its own motion, this court was merely looking into its own active jurisdiction to do full and complete justice in the matter before it. We found that both the district court and this court, though possessing complete potential jurisdiction to grant adequate relief, failed to acquire active jurisdiction of the royalty grantees, or of their interest in the res against which this proceeding was directed. As to the absent parties, this proceeding is as truly coram non judice as if potential jurisdiction were lacking.

2 New Orleans Water-Works v. City of New Orleans, 164 U.S. 471, 480, 17 S.Ct. 161, 41 L.Ed. 518.

In the Bourdieu case, supra, the Supreme Court was referring to a necessary party that could not be brought before it, and there is nothing in its opinion to indicate that a court of equity should strain hard to determine the merits of a cause in the absence of one who is within its jurisdiction and can be made a party to the suit. While the court said that it would be a waste of time to enter upon a consideration of the indispensability of the presence of the United States (which was the absent party), it later expressly held that the United States was "not an indispensable party," since a mere inspection of the bill at once disclosed that it stated no cause of action against any one.

In the instant case the situation is entirely different. There was no reason for a court of equity to strain to find a way to adjudicate the merits of a controversy in the absence of interested parties beyond its jurisdiction, because here, for aught that appears, the presence of the royalty grantees was readily obtainable. Aside from these considerations, every indispensable party must be brought into court, actually or constructively, or the suit will be dismissed if a substantial claim is stated in the complaint.[3] It is axiomatic that indispensable parties cannot be dispensed with in diversity cases even though their presence will defeat federal jurisdiction.

In the Bourdieu case the rights of the United States were in no way threatened; it had no interest requiring protection in a proceeding that at the threshold was seen to be without substance; and the court held that it was not an indispensable party to the particular suit, without expressing an opinion as to what its status would be "upon a good bill." If we apply to the case before us the test thus laid down, we find that the rights of the royalty grantees were directly threatened in the suit to cancel the lease, and that they were directly affected in the judgment confirming it. The validity of the lease was the paramount issue on the hearing below, both as to the original bill and as to the counterclaim. The confirmation of its validity in the judgment under review directly affected vested rights of the royalty grantees without giving them an opportunity to be heard.

Except where the court had jurisdiction without regard to diversity of citizenship, we have been cited to no decision of the Supreme Court or of this court, and we have found none, where an inquiry as to the presence of indispensable parties was dispensed with on the ground that no cause of action was stated in the complaint. In Sneed v. Phillips Petroleum Co., 5 Cir., 76 F.2d 785, where jurisdiction rested solely on the ground of diversity of citizenship, this court expressly refused to proceed until certain persons whose presence it held to be indispensable were made parties. Notwithstanding the contention there that no cause of action was stated, this court held that a substantial claim was presented in the complaint, and remanded the cause with directions to bring in the absent parties.

The maxim that the law never requires the doing of an idle thing cannot be invoked in diversity cases to avoid an inquiry as to the indispensability of parties where a substantial claim is made in the complaint. The original bill in this case sought cancellation of the same lease that the counterclaim sought to confirm.[4] The judgment appealed from not only dismissed the original bill, but granted the relief prayed for in the counterclaim.

In the majority opinion we pointed out that these royalty grantees had separate and distinct vested mineral interests, which would necessarily be prejudicially affected by confirmation as well as by cancellation of the lease. To say that it is useless to inquire into the question of indispensable parties in diversity cases, where a substantial claim is stated in the complaint, is almost the same as saying that it is a waste of time for the court to look into its own jurisdiction. In Mallow v. Hinde, 12 Wheat. 193, 198, 6 L.Ed. 599, the court indicated that it

---

[3] Barney v. Baltimore City, 6 Wall. 280, 284, 285, 18 L.Ed. 825; Donovan v. Campion, 8 Cir., 85 F. 71, 72. See also Dobie on Federal Procedure, p. 218, which says: "There can be no dispensing with indispensable parties."

[4] Additional parties may be brought in under the counterclaim or cross-claim. Rule 13(h) of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c.

might put its decision upon lack of jurisdiction or upon a much broader ground. It said:

"We do not put this case upon the ground of jurisdiction, but upon a much broader ground, which must equally apply to all courts of equity, whatever may be their structure as to jurisdiction. We put it on the ground that no court can adjudicate directly upon a person's rights, without the party being either actually or constructively before the court."

Since neither of the judges who concurred in the decision in this case is of the opinion that the petition for rehearing should be granted, the petition is denied.

HUTCHESON, Circuit Judge, dissents.