Vern E. ALDEN et al., Partners in a Limited Partnership Doing Business Under the Name and Style of the Vern E. Alden Company, Plaintiffs,

v.

CENTRAL POWER ELECTRIC COOPERATIVE, Inc., a North Dakota Corporation, Defendant.

Civ. No. 2895.

United States District Court
D. North Dakota,
Northwestern Division.

Jan. 19, 1956.

———◆———

John C. McKenzie (of Baker, McKenzie, Hightower & Brainerd), Chicago, Ill., and Harold Hager (of Degnan, Hager & McElroy), Grand Forks, N. D., for plaintiffs.

Ward M. Kirby and Theodore Kellogg (of Mackoff, Kellogg, Muggli & Kirby), Dickinson, N. D., for defendant.

REGISTER, District Judge.

The present action arises out of a controversy stemming from the construction of a steam power plant at Velva, North Dakota. The defendant is a North Dakota corporation, and is the owner of the plant. Plaintiffs are residents of the state of Illinois, and are a firm of engineers who participated in the design and construction of the plant. Jurisdiction is based solely upon diversity of citizenship.

The Complaint consists of two counts, Count I being based upon a written contract, incorporated in the Complaint, which was entered into by and between the defendant and the Ulteig Engineering Corporation, Fargo, North Dakota, a North Dakota corporation. Plaintiff alleges this contract was "for the express benefit of the plaintiffs" and further alleges, in effect, that defendant requested and required of plaintiffs certain additional work and services beyond the scope of the contract, in return for a promise made directly to plaintiffs to pay additional compensation therefor. Plaintiffs claim full performance of all work and services, and a subsequent failure and refusal by the defendant to pay in accordance with its alleged promise.

Count II alleges, in essence, work and services performed at the special instance and request of the defendant and demands payment for the reasonable value thereof.

Defendant in its answer admitted the execution of said contract, but alleged that it constituted only a part of the entire contract, and set forth the alleged entire contract. Defendant denied that said contract was for the benefit of plaintiffs, denied generally the allegations as to liability and denied any breach of contractual obligations. Defendant further alleged that plaintiff had failed to join Ulteig Engineering Corporation, "an indispensable party plaintiff"; that "said plaintiff is not the real party in interest"; and served and filed a counterclaim in the amount of $926,-000, which counterclaim was based, in general, on alleged damages and losses resulting from "dilatory and arbitrary tactics and unreasonable delay of the Plaintiffs". Defendant therein alleged that " * * * the Plaintiffs * * * under and by virtue of an undertaking and agreement made in writing between the Plaintiffs and Ulteig Engineering Corporation did, for valuable considerations and for the direct benefit of the Defendant, undertake and agree to perform the services described in said Engineering Contract, and to be responsible for the performance of such services, and the Plaintiffs thereafter entered upon

**926**

the performance thereof and became liable to the Defendant directly therefor".

The case is now before the Court on motions of the respective parties. Plaintiffs' motion, pursuant to Rule 12(d) of the Federal Rules of Civil Procedure, 28 U.S.C.A., is for determination of certain defenses and portions of the Answer and to strike defendant's counterclaim. Defendant, pursuant to Rules 13(h) and 19, Federal Rules of Civil Procedure, has moved the Ulteig Engineering Corporation be joined as an indispensable party plaintiff.

The vital issue now before the Court is whether the Ulteig Engineering Corporation is an indispensable party plaintiff.

 The rule as to indispensability of parties must be governed by Federal rules. Cowling v. Deep Vein Coal Co., Inc., 7 Cir., 183 F.2d 652, 656. Rule 19 (a) of the Federal Rules of Civil Procedure provides that " * * * persons having a joint interest shall be made parties and be joined on the same side as plaintiffs or defendants. * * *"

 Though there is no prescribed formula for determining whether a person or corporation is an indispensable party, all persons who have an interest in the controversy of such a nature that a final decree cannot be made without affecting that interest, or without leaving the controversy in such condition that its final determination may be wholly inconsistent with equity and good conscience, are "indispensable parties". Carroll v. New York Life Ins. Co., 8 Cir., 94 F.2d 333; 21 Words and Phrases, pp. 177 to 180, incl.; 2 Barron and Holtzoff, Federal Practice and Procedure, p. 58. " 'Indispensable' parties are those whose interests are so bound up in the subject matter of litigation and the relief sought that the court cannot proceed without them, or proceed to a final judgment without affecting their interests." Division 525, Order of Railway Conductors of America v. Gorman, 8 Cir., 133 F.2d 273, 276.

The Courts are in virtual agreement as to the test to be applied; the difficulty is in the application of that test to the facts in the individual case.

 The contract incorporated in the complaint is designated "Supplement", dated November 26, 1949, and is between the defendant in this action (therein called the "Owner") and Ulteig Engineering Corporation. In the contract it is stated that it "supplements the Engineering Service Contract of even date herewith between the Owner and the Engineer (Hereinafter called the 'Engineering Contract')" and further provides that:

"Without in any way limiting the Engineer's obligations set forth in the Engineering Contract and Exhibit 1, the Engineer shall enter into an engineering service contract for the design and supervision of construction of the Project with Vern E. Alden Company, Engineers of Chicago, Illinois, (hereinafter called 'Alden Company') primarily for the performance of the services listed in paragraphs 8 and 9 of Exhibit 1."

With reference to certain compensation to be paid, it provides that "the Owner shall pay to the Engineer and to the Alden Company as compensation for all services to be performed by the Engineer and Alden Company for the Project" as thereinafter stated: also,

"The Engineer and Alden Company agree that the total cost of all the engineering services listed in Exhibit 1 shall not exceed $500,000.-00 (hereinafter called the 'Maximum Compensation')";

the contract provides further that, in event of certain modification of the work, "the Engineer shall have the right to ask for a revision in the Maximum Compensation and the Owner agrees to give such a request careful consideration"; further, that no claims for extras "shall be presented or allowed unless the performance of such extra services shall

be authorized in writing by the Owner in advance of their performance and the basis of compensation therefor agreed upon between the parties"; and such "Supplement" further provides that

"The Engineer agrees to be solely responsible to the Owner to render diligently and competently all engineering services which shall be necessary or advisable for the expeditious, economical, and sound design and construction of the Project and all of the other services listed in Exhibit 1".

As to payments, Section 5 of said Supplement provides as follows:

"The Engineer shall submit to the Owner and the Administrator at four-week intervals a certified statement, in duplicate, of the amounts due the Engineer and Alden Company for services hereunder, which statement shall be in accordance with the applicable reports of engineering progress required by Article V, Section 1, of the Engineering Contract, and shall be in such detail and contain such supporting data as the Owner may request. Upon approval of each such statement by the Owner, 90% of the amount thereof shall be payable. The Owner agrees to pay the amounts indicated to be due to Alden Company directly to Alden Company. The balance, if any, of the compensation payable under Section 4 hereof shall be due and payable within thirty (30) days after completion of the Project. The Project shall be deemed complete for the purpose of this agreement when all required final documents, including a certificate of completion, have been submitted by the Engineer and approved by the Owner and the Administrator".

The "Engineering Contract" referred to in the Supplement, and also dated November 26, 1949, was between the defendant herein and said Ulteig Engineering Corporation, and was entitled "Engineering Service Contract for the Design and Supervision of Construction of a Generating Plant and Supplement".

Plaintiffs in their brief (page 7) assert: "It is plaintiffs' contention that not only is Ulteig an indispensable party to defendant's counterclaim, but it is the only party against whom defendant has a cause of action". Plaintiffs concede that said Ulteig Engineering Corporation is an indispensable party, but contend that it should be ordered joined as a defendant.

Plaintiffs cite the case of Capital Fire Ins. Co. of California v. Langhorne, 8 Cir., 146 F.2d 237, in which the Court, in effect, held that, in that case, the third party beneficiary had the right to sue on a contract made for his benefit, the action not being prosecuted upon an alleged independent contract, but upon an independent claim against the insurance company, vested in him by a contract made for his benefit by the insured and the company (plaintiff being the vendor on a contract for deed).

Plaintiffs emphasize the provision in the "Supplement" for payment to be made directly by the defendant to them, and assert (brief, page 7) "From the terms of the instrument relied upon, it is clear that plaintiffs have an independent right to payment by defendant herein". Plaintiffs in effect contend that they are thus vested with an independent claim under the contract, which was allegedly made for their benefit by the defendant and Ulteig Engineering Corporation. However, the certified statement upon which such payment shall be based must be submitted by the Engineer (Ulteig Engineering Corporation), and payment is conditioned upon approval by the owner. The provision for direct payment to plaintiffs is but one provision of the agreement, which agreement must be considered as a whole.

"The whole of a contract is to be taken together so as to give effect to every part if reasonably practicable. Each clause is to help interpret the others." Section 9–0706, NDRC 1943.

"Several contracts relating to the same matters between the same parties and made as parts of substantially one transaction are to be taken together." Section 9-0707, NDRC 1943.

Such "Supplement" also provides: "It is the intention of this Agreement that Ulteig Corporation and Alden Company working together as a team shall do all of the things which are necessary * * *", and "Ulteig Corporation and Alden Company agree that by their joint work they will give the Owner all of the assistance required to carry through this undertaking".

It is the opinion of this Court that a full and final determination of the issues cannot be had without the participation of the Ulteig Engineering Corporation, which is one of the principals to the written contracts. See State of Washington v. United States, 9 Cir., 87 F.2d 421; Brown v. Christman, 75 U.S.App. D.C. 203, 126 F.2d 625, 631; and Calcote v. Texas Pac. Coal & Oil Co., 5 Cir., 157 F.2d 216, 167 A.L.R. 413. It also appears to the satisfaction of this Court that the interest of said Ulteig Engineering Corporation is such that it is an indispensable party plaintiff. A careful study of the entire contract leads inescapably to the conclusion that said Corporation and plaintiffs do have a joint interest thereunder, within the meaning of Rule 19(a), Federal Rules of Civil Procedure.

The effect of joinder of the Ulteig Engineering Corporation as a party plaintiff would be that of ousting this court from jurisdiction.

"To give a federal court jurisdiction, all parties on one side of the action must be citizens of different states from all parties on the other side". 35 C.J.S., Federal Courts, § 58, p. 880; Hooe v. Jamieson, 166 U.S. 395, 17 S.Ct. 596, 41 L.Ed. 1049. Also: 35 C.J.S., Federal Courts, § 59 and 60, pp. 884-887, incl.

"Jurisdictional issues may be raised by the court at any time on its own motion." Hackner v. Guaranty Trust Co. of New York, 2 Cir., 117 F.2d 95; 35 C.J.S., Federal Courts, § 93(2), p. 945.

"In diversity cases, the question of indispensable parties is inherent in the issue of federal jurisdiction, the determination of which should never await a decision on the merits if the complaint states a cause of action. Jurisdictional questions come first in the orderly disposition of a case"; and,

"It is argued that appellee has not raised the question, and that appellants may not now object, having brought the suit without joining indispensable parties as plaintiffs or defendants; but it was within the power of the court below to raise the issue of its own motion, since federal jurisdiction depended wholly upon diversity of citizenship and it was impossible to determine whether such diversity existed unless all indispensable parties were before the court and the citizenship of each was a matter of record." Calcote v. Texas Pac. Coal & Oil Co., 5 Cir., 157 F.2d 216, 218, 167 A.L.R. 413.

"The rule as to indispensability of parties calls for reconciliation of desirability on one hand of preventing multiplicity of suits and obtaining a complete and final decree between all interested parties, and, on the other hand, of having some adjudication if at all possible, rather than none, which would leave parties remediless, because of an ideal desire to have all interested parties before court." Gauss v. Kirk, 91 U.S. App.D.C. 80, 198 F.2d 83, 33 A.L.R. 2d 1085; Moore's Federal Practice, Vol. 3, 2d Ed., pp. 2154, 2155.

The record shows that Ulteig Engineering Corporation is a North Dakota Corporation. Upon joinder of such corporation as a party plaintiff, jurisdiction of this Court, which jurisdiction is based solely on diversity of citizenship, would be destroyed, as the defendant is likewise a North Dakota corporation.

However, under all of the tests referred to, it appears that said corporation is an indispensable party plaintiff, and even though the effect of such joinder would be the loss of jurisdiction, resulting in dismissal of the action all parties would have the legal right of pursuing their respective remedies in the state courts.

In view of the foregoing, it will not be necessary to consider the other issues before the court.

For the reasons hereinbefore stated, said action and counterclaim will be dismissed.

It Will Be So Ordered.